Fax of Local Associate Counsel:
Attorney John W. Dineen
401-331-9267
& Assoc. Counse Pro Hac Vice
Attorney Jack J. Canzoneri
508-485-4477

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

PETER RIDER, as Trustee of Local 134,
Service Employees International Union, AFL-CIO

Plaintiff,

CIVIL ACTION
NO. 04-419-T

v.

Karen McAninch and Charles Wood

Defendants

**DEFENDANTS' MOTION FOR JUDGMENT ON PLEADINGS**

Defendants respectfully move for judgment on the pleadings dismissing all three counts of the complaint filed by Plaintiff in the above-captioned matter pursuant to Fed. R. Civ. Proc. Rule 12(c). There is good cause for the court to grant this motion as set forth in Defendant's memorandum of law in support of this motion filed simultaneously with the clerk, and Authorities Supplement also filed simultaneously directly with the judge pursuant to Amended General Order #2002-01, both of which are incorporated by reference.

16

Respectfully submitted,

On behalf of Defendants,

Karen McAninch and Charles Wood,

By their attorneys,

ASSOCIATE LOCAL COUNSEL:

John W. Dineen, RI Bar #2346
Yessor Glasson & Dineen
Counselors at Law
One Providence Washington Plaza
Providence, RI 02903
Tele. #: 401-331-3550
Fax #: 401-331-9267

Dated: February ~~8~~ 15, 2005

Respectfully submitted,

On behalf of Defendants,

Karen McAninch and Charles Wood,

By their attorneys,

ASSOCIATE COUNSEL,
ADMISSION PRO HAC VICE:

Alan J. McDonald, Esq.
Jack J. Canzoneri, Esq.
McDonald & Associates
153 Cordaville Road, Ste. 210
Southborough, MA 01772
Tele. #: 508-485-6600
Fax #: 508-485-4477

Dated: February ~~8~~ 15, 2005

**Certificate of Service**

I, John W. Dineen, hereby certify that I have this day, by ~~HAND DELIVERY~~ mail served a copy of the foregoing Defendants' Motion For Judgment On Pleadings upon Counsel for Plaintiff: (1) Associate Local Counsel, Richard M. Peirce (#0564), Roberts, Carroll, Feldstein & Pierce, Ten Weybosset Street – 8th Floor, Providence, RI 02903 [Tele. #401-521-7000; Fax #: 401-521-1328]; (2) Associate Counsel, Admission Pro Hac Vice, Thomas M. Kennedy, Esq. and Stuart Lichten, Kennedy, Schwartz & Cure, P.C., 113 University Place, New York, NY 10003 [Tele.# 212-358-1500], by Fed Ex overnight.

Dated: February ~~8~~ 15, 2005

John W. Dineen, RI Bar #2346

Fax of Local Associate Counsel:
Attorney John W. Dineen
401-331-9267
& Assoc. Counsel Pro Hac Vice
Attorney Jack J. Canzoneri
508-485-4477

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

PETER RIDER, as Trustee of Local 134,
Service Employees International Union, AFL-CIO

Plaintiff,

v.

Karen McAninch and Charles Wood

Defendants

CIVIL ACTION
NO. 04-419-T

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

## I. Introduction

Pursuant to Fed. Rule of Civ. Proc. ("FRCP") Rule 12(c) and Local Rule 10(a), Defendants Karen McAninch and Charles Wood, having duly filed an Answer in the above-referenced matter, respectfully submit this memorandum of law in support of their Motion For Judgment On the Pleadings seeking dismissal of the subject complaint in all respects.

## II. Legal Standard

FRCP Rule 12(c) provides that a party may move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial." The Court should analyze the issues in motion for judgment on the pleadings in the same manner as in a motion to dismiss. Collier v. City of Chicoppe, 158 F.3d 601, 602 (1st Cir. 1998). Thus the Court should accept all the allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant. Rockwell v. Cape Cod Hospital, 26 F.3d 254, 255 (1st Cir. 1994).

## III. Complaint Allegations To Be Deemed True For Purposes Of This Motion

Without conceding the truth of any allegations in Plaintiff's complaint, Defendants acknowledge that the Court, in analyzing the instant motion for judgment on the pleadings, should proceed as though the allegations averred in the complaint are true, as follows.

Defendants Karen McAninch and Charles Wood were members and employees of the Service Employees International Union ("International"), Local 134 ("Local 134" or "SEIU"), at all time material prior to July 30, 2003. During that period McAninch held the position of Business Agent and Wood the position of Financial Secretary-Treasurer with Local 134. Local 134 was the certified collective bargaining agent under the National Labor Relations Act ("NLRA") for several collective bargaining units of employees, who were employed in Rhode Island. Just as McAninch and Wood were members of Local 134, so it is also true that the employees in collective bargaining units represented by Local 134 were members of said Local 134.[1] All members of Local 134 paid dues to Local 134, and this dues was the primary source (if not sole source) of income of Local 134. Said dues was the income by which Local 134 funded its operations including paying the salaries of McAninch and Wood.

In 2003, while serving as full time paid employees of Local 134, Defendants engaged in organizing activities on behalf of a different labor union named the United Service & Allied Workers of Rhode Island, referred to herein as "USAW". USAW sought to convince members of Local 134 to change representation to USAW and to achieve this change by the exercise of rights protected under the National Labor Relations Act. With respect to the specific conduct of Defendants, the Court should assume as follows:

[1] Some of those individuals may have actually been "agency fee payers" of Local 134 rather than members, but that distinction is irrelevant for purposes of this analysis.

(a) Defendants successfully convinced members of each relevant bargaining unit to engage in protected activity under the NLRA of signing a "designation card" which was used to document a "showing of interest" in changing representation from Local 134 to USAW. (Comp. at ¶19)

(b) Defendants further successfully convinced such members to engage in the protected activity of filing these designation cards with the National Labor Relations Board ("NLRB") along with a formal representation petition (known as an "RC Petition"). The membership who filed the RC Petitions at the urging of Defendants were invoking the procedures of the NLRB by which the NLRB conducts a formal election by secret ballot to determine whether a majority of the employees in the relevant bargaining unit wish to change representation from Local 134 to USAW. Further, the members who filed such petition materials were invoking a NLRB procedure at the urging of Defendants by which the NLRB would supervise the election to certify that the choice of representation among the bargaining unit employees was made freely and without coercion, and subject to all of the protections and rights afforded to the employees in such elections under the NLRA.

(c) As alleged in the Complaint, the Court should assume that Defendants, in making the argument to members to engage in the above-referenced protected activity, stated words of a "demeaning" nature about Local 134, and stated positive words about the idea of selecting USAW as their new collective bargaining agent.

(d) Finally, as alleged in the Complaint, the Court should also assume that Defendants used their knowledge of the location and composition of membership and content of Local 134's collective bargaining agreements in making these communications.

The Court may assume that the above-described conduct of Defendants violated the constitutions of Local 134 and the International and that they were covered by these constitutions. Further, the Court may assume that the specific provisions of said constitutions forbid employees and members of Local 134 and the International such as McAninch and Wood from seeking to convince anyone to exercise rights protected under the National Labor Relations Act, where the exercise of such protected rights had the possibility of causing an adverse impact on the International or Local 134. The Court additionally should assume that the constitutions proscribed Defendants from stating words that were demeaning about Local 134 and positive about USAW in an attempt to convince members to engage in protected activity that would possibly injure Local 134.

With respect to damages, the Court may further assume as alleged in the complaint that the conduct of Defendants, in successfully convincing membership of Local 134 to engage in the above-described protected activity, ultimately injured Local 134. This injury entailed Local 134 losing certain NLRB-supervised elections and that, in turn, damaged Local 134 financially, and "severely prejudiced" Local 134 in its ability to represent the remaining membership of Local 134. Indeed, it may be assumed that approximately 500 members of Local 134 chose representation by USAW in NLRB-supervised elections, and that Local 134 lost dues income from such members. The Court may further assume that there were damages to bargaining power and finances of Local 134 that resulted from the loss of approximately 500 members as alleged in the complaint through the NLRB-supervised elections, even though Local 134 is affiliated with the International which has approximately 1.7 million members in the United States of America.

Finally, the Court may assume for purposes of this motion, as alleged in the third cause of action, that Defendants improperly received 3% salary increases without authorization because the increases were obtained without approval through a regular membership meeting without a quorum as required by the Local 134 Constitution.

## IV. Argument

For each of the separate and independent reasons set forth below all three counts of the subject complaint should be dismissed. Germane to most of the analysis below is the ruling of Judge Mary M. Lisi on October 27, 1999, adopting the Report and Recommendation submitted by Magistrate Judge David L. Martin dated October 8, 1999 of the United States District Court of Rhode Island in Rhode Island Fed. of Teach. and Health Prof. v. Callaci, CA No. 99-005 ML (1999) ("Callaci"). For the convenience of the court the ruling in Callaci is included in the Appendix that has been directly provided pursuant to Amended General Order #2002-01.

### A. National Labor Relations Act Preemption Of Plaintiff's Complaint.

The National Labor Relations Act ("NLRA"), 29 U.S.C. §§151, et seq., is a comprehensive scheme regulating labor-management relations in the private sector. There are three discrete sections of the NLRA which are of particular note in this case, namely, Sections 7, 8 and 9, 29 U.S.C. §§157-59.

Section 7 of the NLRA, 29 U.S.C. §157, defines "protected activity" as follows:

> § 157. Rights of employees as to organization, collective bargaining, etc.
>
> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that

> such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a)(3) [29 USCS § 158(a)(3)].

29 USCS § 157 (2005) (emphasis added).Section 8 of the NLRA, 29 U.S.C. §158, defines conduct that interferes with protected rights under Section 7 as an unfair labor practice. Finally, Section 9 contains three relevant subparts which may be summarized as follows:

- NLRA §9(a) provides that the National Labor Relations Board ("NLRB") shall be empowered to decide whether any person has committed an unfair labor practice under Section 8 and prevent same;[2]
- NLRA §9(b) provides that the NLRB "shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this Act, the unit appropriate for the purposes of collective bargaining";
- NLRA §9(c) provides that the NLRB shall administer and supervise the entire process relating to employee selection of a certified collective bargaining agent.

29 U.S.C. §§159.

With respect to its powers (only a fraction of which are summarized above), the NLRB has promulgated extensive regulations defining the particulars of exactly how the NLRB shall exercise of those powers. That its powers are delineated comprehensively is not only apparent from a review of the NLRB's regulations, 29 C.F.R. §§102.1 to 102.155 (unfair labor practice and election procedures), 29 C.F.R. §§101.1 to 101.43, 29 C.F.R. §§103.1 to 103.100; but also is well recognized by the courts including the First Circuit.

> When Congress enacted the NLRA, it enacted comprehensive procedural rules and created the NLRB to administer this specially designed regulatory structure. The result was a complex and interrelated scheme of federal law, remedies and administration designed to achieve uniformity in our national labor policy.

---

[2] Under NLRA §10(j), 29 U.S.C. §160(j), the NLRB through its Regional Directors may seek a federal district court injunction to enjoin unfair labor practices pending the NLRB's internal agency proceedings.

> In order to achieve the desired uniformity, Congress entrusted the interpretation and enforcement of the NLRA to a centralized administrative agency, armed with its own procedures, and equipped with its specialized knowledge and cumulative experience. This administrative scheme was designed to avoid the danger of conflicting or incompatible adjudications such as would inevitably result from having multiple forums, with their diverse procedures, entertain claims under the NLRA. The Garmon rule is therefore intended to preclude state interference with the NLRB's interpretation and enforcement of the integrated scheme of regulation established by the NLRA.

Chaulk Services v. Mass. Comm'n Against Discrim., 70 F.3d 1361, 1364 (1st Cir. 1995) (internal citations omitted) (citing San Diego Building Trades Council v. Garmon, 359 U.S. 236, 242 (1959); New York Telephone Co. v. New York Dept. of Labor, 440 U.S. 519, 527 (1979); Garner v. Teamsters, Chauffeurs and Helpers Local Union No. 776, 346 U.S. 485, 490-91 (1953); Golden State Transit Corp. v. City of Los Angeles, 475 U.S. 608, 613 (1986)).

The NLRB's primary jurisdiction in the enforcement of rights under the NLRA, and its comprehensive rules and procedures that regulate every aspect of labor management relations (that it seeks to regulate) has been one of the key reasons that the Supreme Court has held that certain federal and state claims that interfere with the NLRB's primary jurisdiction are preempted.[3] The First Circuit, citing the lead Supreme Court case on NLRA preemption in San Diego Building Trades Council v. Garmon, 359 U.S. 236, has noted the following in this regard:

> We begin by delineating the present scope of the so called Garmon preemption doctrine. The Supreme Court held in Garmon that when an activity is arguably subject to §7 or §8 of the National Labor Relations Act, the states as well as the federal courts must

[3] The doctrine of preemption also derives from the Supremacy Clause of the United States Constitution. U.S. Const., Art. IV, c.2. This is the holding of the Supreme Court in Garmon, and this Court as well has recognized this in two of its own rulings applying NLRA Preemption doctrine. Charlesgate Nursing Center v. Rhode Island, 723 F. Supp. 859, 864 (R.I.D.C. 1989); Southern Union Gas. Co. v. Rhode Island Div. of Pub. Utilities and Carriers, 306 F. Supp 2d 129, 133 (R.I.D.C. 2004).

> defer to the exclusive competence of the NLRB if the danger of state interference with national labor policy is to be averted.

Chaulk Services, 70 F.3d at 1364 (citing Garmon, 358 U.S. at 245).

With respect to the particular branch of NLRA preemption doctrine applicable here, referred to as "Garmon Preemption",[4] the Supreme Court in Garmon held that federal and state court claims are preempted by the NLRA whenever the activity that is the subject of such federal and state court claims is even "arguably subject to Section 7 and Section 8 of the NLRA." Id. at 244-46. Where that is so, the courts are not to entertain claims implicating such activity. Rather, as the court in Garmon explained,

> [i]t is not [even] for us to decide whether the National Labor Relations Board would have, or should have, decided these questions in the same manner. When an activity is arguably subject to §7 or §8 of the Act, the **States as well as the Federal courts must defer to the exclusive competence of the National Labor Relations Board** if the danger of state interference with national policy is to be averted.

Garmon, 358 U.S. at 244 (emphasis added).

[4] The standard applied in Garmon preemption cases was more recently summarized by the Supreme Court, as follows:

> State regulations and causes of action are presumptively preempted if they concern conduct that is actually or arguably either prohibited or protected by the Act. The state regulation or cause of action may, however, be sustained if the behavior to be regulated is behavior that is of only peripheral concern to the federal law or touches interests deeply rooted in local feeling and responsibility. In such cases, the State's interest in controlling or remedying the effects of the conduct is balanced against both the interference with the National Labor Relations Board's ability to adjudicate controversies committed to it by the Act, and the risk that the State will sanction conduct that the Act protects.

Belknap, 463 U.S. at 498-99 (citations omitted) (emphasis added); see also Local 926, Int'l Union of Operating Eng'rs v. Jones, 460 U.S. 669, 676 (1983).

Further, Garmon preemption is expansive. The Supreme Court in commenting on the breadth of Garmon preemption noted that claims are preempted even if the NLRB does not ensure adjudication of the disputed activity:

> To require the States to yield to the primary jurisdiction of the National Board does not ensure Board adjudication of the status of a disputed activity. . . . [T]he Board may also fail to determine the status of the disputed conduct by declining to assert jurisdiction, or by refusal of the General Counsel to file a charge, or by adopting some other disposition which does not define the nature of the activity with unclouded legal significance. This was the basic problem underlying our decision in Guss v. Utah Labor Relations Board, 353 U.S. 1. In that case we held that the failure of the National Labor Relations Board to assume jurisdiction did not leave the States free to regulate activities they would otherwise be precluded from regulating. It follows that the failure of the Board to define the legal significance under the Act of a particular activity does not give the States the power to act. In the absence of the Board's clear determination that an activity is neither protected nor prohibited or of compelling precedent applied to essentially undisputed facts, it is not for this Court to decide whether such activities are subject to state jurisdiction. . . . The governing consideration is that to allow the States to control activities that are potentially subject to federal regulation involves too great a danger of conflict with national labor policy.

Id. at 245-46.

Moreover, even if a court ruling imposes damages for conduct that is arguably regulated under the NLRA or intentionally left unregulated by the NLRB,[5] and makes no reference to the NLRA, still it will be preempted because the imposition of such damages will have the effect of regulating labor management relations in derogation of the primary jurisdiction of the NLRB. The Supreme Court in Garmon explained:

---

[5] In a separate branch of NLRA preemption known as "Machinists Preemption" the Supreme Court holds that federal courts, as well as state and local governments are prohibited from regulating activities which Congress intended to be left unrestricted by any governmental power. Lodge 76, Int'l Assoc. of Machinists & Aerospace Workers v. Wisconsin Emp. Comm., 427 U.S. 132, 140, (1976).

> [State] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy.

Garmon, 359 U.S. at 247.

Although Garmon preemption originated in a case where Section 7 and 8 rights were implicated by a lawsuit, it is equally true that any state or federal action which may impact NLRB determination of representation issues (e.g., whether an election was fair, whether a union should be certified or remain certified or ousted) under Section 9 as well is preempted. An application of NLRA preemption in the context of Section 9 occurred in Local 807, Int'l Bhd. of Teamsters v. Brink's, Inc., 744 F.2d 283, 287 (2nd Cir. 1984), where the Second Circuit stated:

> We likewise affirm the district court's refusal to enjoin defendants from withdrawing recognition of Local 807 upon expiration of their collective bargaining agreements. The relief plaintiff seeks goes to the merits of its unfair labor practices claim. Despite plaintiff's attempt to characterize that claim as arising under the collective bargaining agreements . . . and hence within the district court's jurisdiction under § 301 of the LMRA, resolution of the claim turns on Local 807's status as a successor union in light of the prohibitions against mixed guard and nonguard units contained in **§9(b)(3)**. Under the preemption doctrine established in San Diego Building Trades Council v. Garmon, 359 U.S. 236, 3 L. Ed. 2d 775, 79 S. Ct. 773 (1959), **issues of representative status are within the exclusive jurisdiction of the NLRA**. See West Point-Pepperell, Inc. v. Textile Workers Union, 559 F.2d 304 (5th Cir. 1977); NLRB v. Warrensburg Board and Paper Corp., 340 F.2d 920, 924 (2d Cir. 1965); see also Amalgamated Association of Street, Electric Railway & Motor Coach Employees v. Lockridge, 403 U.S. 274, 29 L. Ed. 2d 473, 91 S. Ct. 1909 (1971). The district court thus lacked jurisdiction to issue such an injunction.

286-287 (emphasis added); West Point-Pepperell, Inc. v. Textile Workers Union, 559 F.2d 304 (5th Cir. 1977) ("Section 159 of the Act, Congress vested the NLRB with the exclusive authority

---

to make the factual finding regarding the representative status of labor organizations. It is clear that wherever there is a change in the representation of a union, the board, and not the courts, is the proper body to reassess the change.").

Indeed, the breadth of the preemption under Section 9 is so expansive that courts do not even have jurisdiction to review NLRB determinations under Section 9. Rather, as the First Circuit has explained, in order to obtain review of an NRLB Section 9 decision, a party must first transform the case into an unfair labor practice under Section 8 to obtain judicial review of an NLRB determination:

> The Board is clearly right in pointing out that we lack the legal power to review directly an NLRB determination about which union represents a group of employees. NLRA §10 authorizes judicial review of NLRA §8 "unfair labor practice" determinations, but it does not authorize judicial review of NLRA §9 "representation" determinations.

Union De La Construccion De Concreto Y Equipo Pesado, v. NLRB, 10 F.3d 14, 15-16 (1st Cir. 1993). Thus, whatever the breadth of preemption under NLRA §§7-8, the breadth of preemption under NLRA §9 is at least as great if not even greater.

In evaluating the merits of Defendants' preemption argument, the Court may consider the ruling of Rhode Island U.S.D.C. Judge Lisi in Callaci, CA No. 99-005 ML (1999), submitted in the separate appendix to this memorandum of law. Judge Lisi's ruling in Callaci confirms the legal principles set forth above, and in applying them dismissed a complaint with allegations similar to those raised in this case. In the two subsections which follow Defendants apply the foregoing principles of NLRA preemption and demonstrate that Counts I, II, and III (at ¶28) of Plaintiff's complaint are preempted by NLRA §§7-8; and are also independently preempted under NLRA §9. For either or both reasons, without more, the Court therefore may dismiss the complaint at Counts I, II, and III (¶28).

### 1. Garmon Preemption Under Sections 7 And 8 Of The NLRA Of Counts I, II, And III (¶28).

Applying the Garmon Preemption Doctrine to the instant case, the Court should find that the conduct of Defendants as stated in Counts I and II and the allegation at ¶28 of Count III is arguably protected or prohibited by the NLRA at Sections 7 and 8 and therefore Counts I, II and III (¶28) should be dismissed as completely preempted by the NLRA. The sole and exclusive forum for Plaintiff to raise its complaint about Defendants' conduct is by filing an unfair labor practice charge with Region One of the NLRB. Accordingly Counts I and II which attack conduct of Defendants that is arguably governed by the NLRA, should be dismissed. As well Count III should be dismissed to the extent it asserts a claim based upon para. 28.

The following principles underpin this conclusion and are explained below:

(a) The conduct of Defendants about which Plaintiff complains is arguably protected "concerted activity" or "mutual aid or protection" within the meaning of NLRA §7. Plaintiff's complaint which would have the court penalize them for such conduct arguably violates NLRA §8 which protects employees from interference in the exercise of Section 7 rights.

(b) By attacking Defendants' conduct Plaintiff's lawsuit also has the effect derivatively of interfering with and coercing other employees from exercising their own NLRA Section 7 rights and this as well arguably violates Section 8 which protects employees from coercion in the exercise of Section 7 rights.

(c) Defendants' conduct as alleged is arguably prohibited by the NLRA §8 as conduct interfering with Section 7 rights of employees who selected Local 134 as bargaining agent.

**(a) Counts I, II And III (¶28) Relate To Protected Concerted Activity As Well As "Mutual Aid And Protection" Activities <u>Of Defendants Under NLRA Section 7.</u>**

The damages alleged by Plaintiff all originate from the contention that multiple bargaining units voted to oust Local 134.[6] Therefore, it is important to understand specifically what Plaintiff alleges that Defendants did to trigger the loss of such bargaining units. The Complaint expressly answers this question. It states that Wood and McAninch distributed "designation cards" to members of SEIU Local 134. (Comp. at ¶19.) Presumably Plaintiff attacks Defendants for having encouraged such members to file those designation cards along with a petition with the NLRB in order to trigger the NLRB to administer and supervise an election to determine whether employees wanted to retain or oust Plaintiff/Local 134. Therefore, the conduct of Defendants targeted by Plaintiff all relates to efforts to encourage the members of Local 134 to engage in lawful "protected activity" under the NLRA and trigger an election that the NLRB was exclusively authorized to administer to ensure that the election reflected employee free choice without coercion.

There can be no question that the above described conduct is protected by Section 7 and Plaintiff even alludes to this at ¶14 of the complaint ("While Defendants MacAninch [sic] and Wood and the members of Local 134 had a right to form and join any labor organization of their choice. . . ."). Section 7 of the NLRA protects the rights of members of a union to have their representation changed from one union to another and this subsumes the right <u>to ask</u> individuals to sign designation cards, <u>to sign</u> designation cards, <u>to file</u> designation cards and representation petitions with the NLRB, and <u>to vote</u> in an NLRB-supervised election freely and without

[6] If no bargaining units ousted Local 134 then the alleged consequential damages alleged by Plaintiff would not have been incurred.

coercion. For example, in Brown v. National Union of Marine Cooks and Stewards, 104 F. Supp. 685, 689 (N. D. Cal. 1951) the court granted the NLRB's request for an injunction under NLRA §10(j) against a union's interference with efforts by its membership to file petitions (as was done here) with the NLRB to oust such union.[7]

Another reason that Wood's and McAninch's conduct implicates Section 7 is because it arguably constituted "mutual aid or protection" within the meaning of Section 7. In Eastex, Inc. v. NLRB, 437 U.S. 556 (1978), the Supreme Court made clear that the "mutual aid or protection" clause in Section 7 of the Act encompasses employee attempts "to improve terms and conditions of employment or otherwise improve their lot as employees through channels outside the immediate employee-employer relationship." 437 U.S. at 564-65. The reach of Section 7 encompasses concerted activities of employees "in support of employees of employers other than their own." Id. In this case the court need only find that Wood's and McAninch's conduct, as is assailed by SEIU, was for the mutual aid and protection of their fellow brother and sister union members and therefore was arguably protected as Section 7 "mutual aid" activity. As such, for this additional reason their conduct may not be regulated through a damages claim in federal court that would punish them for engaging in such mutual aid and protection. That preemption

---

[7] In Brown the court reasoned as follows in this regard:

> These complainants have the right of self organization, which includes the right to attempt to change the leadership and policies of a union. They have the right to bargain collectively through representatives of their own choosing, to join or not to join a union, to assist a union in furthering its and to engage in concerted activities for their mutual aid or protection though no union activity is involved or collective bargaining contemplated. I believe that to give effect to the broad purposes of the Act the activities of the employees here mentioned are within the range of rights which Congress intended to protect.

104 F. Supp. at 689.

applies to this situation was reinforced by the Supreme Court's statement in Eastex where it reiterated that the task of defining the scope of Section 7 "is for the Board to perform in the first instance as it considers the wide variety of cases that come before it." Eastex, Inc. v. NLRB, 437 U.S. 556, 568 (1978). Therefore, to the extent that SEIU argues that Section 7 rights are less expansive than as argued above, such argument only reinforces the conclusion that the claims presented are preempted by the NLRA because resolution of SEIU's claim requires this court to decide that issue, rather than the NLRB pursuant to its primary jurisdiction over such matters.

In summary, the Court's inquiry into this case will unavoidably require it to determine the merits of the above described points and therefore would require the Court to construe whether Defendants were or were not encouraging the membership to engage in conduct that was arguably protected under Section 7 of the Act.

**(b) Aside From The Status Of Defendants' Conduct Independently As Protected Activity, Their Conduct Was Arguably Protected In Any Event Because The Retaliation Against Defendants By Plaintiff Via This Lawsuit Arguably Coerces Sister And Brother Union Members Of Defendants To Refrain From Similarly Engaging In Such Protected Activity And/Or Mutual Aid For Fear Of Similar Federal Court Retaliation By SEIU.**

A further concern in this case is that the retaliation against Wood and McAninch by SEIU through its $100,000 federal court lawsuit against them has the effect of coercing other employees from exercising similar Section 7 rights to rid themselves of the Plaintiff/SEIU. The Plaintiff's complaint puts this court in a position to evaluate and decide whether SEIU's conduct in retaliating against Wood and McAninch has the effect of coercing employees of bargaining

units represented by Local 134 from seeking to leave Local 134, as they have done, and may well do in the future. In short, SEIU's lawsuit puts the court in the position of interfering with NLRB primary jurisdiction over the determination of that issue. NLRB v. Puerto Rico Newspaper Guild, Local 225, 343 F. Supp. 884, 889 (1st Cir. 1972) ("Where the acts of restraint and coercion are directed at supervisors or other persons not personally protected by the Act, if the acts are committed in the presence of employees who have the protection of the Act, this is sufficient to justify a finding of violation of Section 8(b)(1)(A) of the Act.") (citing United Furniture Workers of America Local 309/Smith Cabinet Mfg. Co., 81 NLRB 886, 888-889 (1949)); Brooklyn Spring Corp., 113 NLRB 815 (1955), enforced, 233 F.2d 539 (2nd Cir. 1956); Retail, Wholesale & Dept. Store Employees, 157 NLRB 615 (1966), enforced, 375 F2d 745, 541 (2nd Cir. 1967) ("It was inevitable that the employees should learn of this brutal and unprovoked assault, and the Board properly held that 'these employees might have reasonably regarded these incidents as a reliable indication of what would befall them if they sought to work during the strike").[8] Cf. Retail, Wholesale & Dept. Store Employees, 133 NLRB 1555, 1557 (1961) (reversing hearing officer's finding and holding that physical force directed at non-employee supervisor Hamilton Posner did not coerce employees because said act of striking Posner by the union representative was provoked by misconduct of Posner). Accordingly, the derivative coercion of other employees exercise of Section 7 rights that would be caused by a damages

[8] In Brooklyn Spring the NLRB held that coercion directed at a third party violated the NLRB because the NLRB found that employees would learn of the coercion against the third party and fear that similar coercion would be used against them. Here, the NLRB would have to evaluate evidence and decide whether the coercion directed at Defendants in the form of a lawsuit aimed at penalizing them for conduct "unfaithful" to the Plaintiff, in violation of the Local 137 and SEIU constitutions and bylaws might as well be used by Plaintiff against them.

claim against Wood and McAninch (as SEIU seeks in this lawsuit) is another powerful reason why the instant complaint is subject to Garmon preemption.

**(c) Defendants' Activity Is Arguably Prohibited By The NLRA And On That Basis As Well The Complaint Is Preempted At Counts I, II and III (¶28).**

Although Defendants deny that their conduct was prohibited by the NLRA, the allegations of the complaint describe conduct which is arguably prohibited by the NLRA. Defendants are accused of fraudulently and unfairly abusing their positions as employees of Local 134 in a manner that interfered with Local 134's ability to represent its membership effectively. It is claimed that they acted in a manner contrary to the interests of Local 134, and that this disloyalty "severely prejudiced" the "remaining members of Local 134". (Comp. at ¶¶14-15.) It is further claimed that Defendants' conduct was "directed at harming Local 134 and diminishing its ability to effectively represent its members. (Comp. at ¶19.) This conduct among other things also is alleged to include distributing designation cards, (comp. at ¶19), campaigning against Local 134 by stating words that demeaned Local 134, (comp. at ¶20), and interfering with the "membership agreements" (i.e., collective bargaining agreements) of the members of Local 134, (Comp. at¶23). With respect to ¶28 of Count III, Plaintiff contends that Defendants used funds of Local 134 for purposes of paying for some of the activities described above, all of which relate to encouraging the membership to engage in protected activity.

All of the above allegations arguably relate to concerns about Defendants allegedly having interfered with the rights of other employees to engage in collective bargaining. By raising these assertions against Defendants, Plaintiff again puts this court in the position of having to make a determination as to the scope of rights under Sections 7 and 8 of the NLRA, and whether such conduct was prohibited coercion of employees in the exercise of their right of

self-organization and their right to select and maintain the leadership of their choice, a violation of §8(b)(1)(A) of the NLRA. Because the determination of these issues is reserved for the primary jurisdiction of the NLRB, SEIU's implication of such issues in its complaint allegations is another factor demonstrating that the complaint is subject to Garmon preemption. This was precisely the holding in Callaci, CA No. 99-005 ML (1999), see separate appendix, as well as in Pennsylvania Nurses Association v. Pennsylvania State Education Association, 90 F.3d 797 (3rd. Cir. 1996). In the latter case, the Third Circuit held that conduct, "which undermines the union representing a unit of employees, and thereby induces those employees to change their affiliation, arguably 'constrains or coerces' those employees in their ability to exercise their free choice of an exclusive representative." 90 F.3d at 8032. Because this conduct would be prohibited by the NLRA, the claim was preempted under Garmon, the court reasoning further as follows:

> Notably, for preemption purposes a court need not decide whether the conduct alleged would be deemed to be prohibited by the NLRA, since it is enough that the conduct upon which the state causes of action are based is 'arguably' prohibited.

Id. at 802-803. That same rationale obtains here and dictates that Counts I, II and III (¶28) be dismissed pursuant to the Garmon branch of NLRA preemption.

Summary: Based upon the foregoing this Court should find (as Judge Lisi found in Callaci) that the determination of whether Defendants may be liable for their conduct involves a determination of whether to penalize Defendants for having engaged in conduct that was either protected or prohibited by Section 7 or 8 of the NLRA. As the Supreme Court of the United States held in Garmon, it is the NLRB not the state or federal courts which Congress charged with the mission of interpreting and applying the NLRA, yet Plaintiff's complaint puts the court in the position of having to intrude into the NLRB's exclusive jurisdiction over such matters

because Counts I, II and III (¶28) attack conduct that is arguably prohibited or protected by the NLRA. Accordingly, such counts are preempted by the NLRA under Garmon and should be dismissed.

### 2. Garmon Preemption Under Section 9 of The NLRA Of Counts I, II, and III (¶28).

The thrust of Plaintiff's claim for money damages against Defendants is that their conduct resulted in Plaintiff losing bargaining units, and that in turn caused Defendants to lose dues money, as well as bargaining strength due to the reduced size of its membership in Local 134. The Court should find that this damages theory, as underlies Counts I, II and III (¶28), is but a thinly disguised effort to attack the results of the elections that resulted in SEIU's ouster and USAW's succession as the democratically elected bargaining agent of its members. The time and place for SEIU to raise its complaints about having lost such elections was through the procedures afforded by the NLRB. Those procedures provide the parties with the opportunity inter alia to file objections challenging the fairness of the election. 29 C.F.R. §102.69(a). Because of these intricate regulatory safeguards and enforcement procedures, when the NLRB certifies the new bargaining agent, it certifies that the election was proper and reflected employee free choice, under the standards it has established pursuant to Section 9 of the NLRA. If SEIU sought to overturn an election result due to alleged unfair conduct by Wood and McAninch as asserted in the subject lawsuit, SEIU's sole and exclusive recourse was through such NLRB procedures, especially the NLRB's post-election objection procedures which allow a party to the election to raise specific objections to the fairness of the election.[9]

---

[9] An example of the intricate analysis that the NLRB adheres to in such objection proceedings occurred in a case involving SEIU Local 134 and USAW in which USAW claimed that Defendants Wood and McAninch were improperly prohibited from campaigning in a NLRB-supervised representation election. The NLRB hearing officer's ruling in that case is

That the objections process are for such purposes is consistent not only with the text of the NLRB's regulations on such matters, but also with First Circuit precedent reviewing NLRB's decisions on post-election objections. See, for example, the First Circuit's ruling in NLRB v. Newly Weds Foods, Inc., 758 F.2d 4 (1st Cir. 1985) where it upheld the Regional Director's dismissal of objections to an election, and in doing so reviewed several of the legal standards that are applied by the NLRB in evaluating objections to Section 9 representation elections:

> The issue for the Board was "whether an atmosphere of fear and coercion was created" to the point where a free and fair election was not possible. Cross Baking Co. v. NLRB, 453 F.2d 1346, 1348 (1st Cir. 1971); see also NLRB v. Morgan Health Care Center, Inc., 618 F.2d 127, 128-29 (1st Cir. 1980). Since the evidence of coercion consists only of this single statement, the record is more than adequate to support a Board conclusion that the election was free and fair. Moreover, unlike NLRB v. Granite State Minerals, Inc., 674 F.2d 101 (1st Cir. 1982), on which Newly Weds relies, the Regional Director in this case investigated the matter, and the company has presented no further evidence suggesting that the investigation was inadequate."

Id. at 10; see also Melrose-Wakefield Hospital v. NLRB, 615 F.2d 563 (1st Cir. 1980) (enforcing Regional Director's ruling in dismissing objections to election, citing 29 C.F.R. §102.69(c)); NLRB v. Fenway Cambridge Motor Hotel, 601 F.2d 33 (1st Cir. 1979); NLRB v. Labor Services, 721 F.2d 13 (1st Cir. 1983) (review of objections determination of Regional Director, dismissing objections to election).

The First Circuit has also held in upholding the Regional Director's dismissal of objections to an election that the failure to raise grounds for objection at the NLRB hearing on

---

included as the second item in the separately provided appendix to this memorandum. Defendants commend the NLRB hearing officer's ruling in that case to the court's attention insofar as the analysis therein demonstrates all the more how the NLRB examines these issues in a detailed, comprehensive manner in determining whether an election was fair prior to certifying a new collective bargaining agent.

the objections constituted waiver of such objection. Union De La Construccion De Concreto Y Equipo Pesado, v. NLRB, 10 F.3d 14, 15-16 (1st Cir. 1993). This reinforces the conclusion of preemption here since the lawsuit of SEIU over the results of the NLRB supervised elections to USAW is raised outside the context of an objections hearing.

Because the damages sought by SEIU ultimately reduce to a complaint that Defendants conduct in some way made the election results unfair, it follows such claims are preempted by Section 9 of the NLRA. Further, the NLRB's certification of each election in which USAW prevailed over SEIU constitutes conclusive evidence that the elections were conduced in a fair and proper manner and that employees were accorded free choice without coercion. Consequently, SEIU's subject lawsuit, a lawsuit which collaterally attacks those election results as somehow tainted by alleged unfair conduct of Wood and McAninch, is preempted by the certifications of the NLRB and its primary jurisdiction over such matters. For this additional reason, the Court should find that Section 9 of the NLRA preempts Counts I, II and III (¶28) of Plaintiff's lawsuit.

Moreover, it should be found that Plaintiff's disguising of its Section 9 NLRA claims as though they were Section 301 union constitution claims is ineffective in avoiding the conclusion of preemption. The Ninth Circuit stated the following on such disguised attempts under Section 301 to attack exclusive NLRB jurisdiction under Section 9:

> Th[e] declaration of the strong policy of judicial deference to initial determination by the NLRB of representation issues is equally applicable to actions under Section 301. In the present case the Union is attempting **an end run around Section 9 of the Act and under the guise of contract interpretation wants to avoid self-determination of a bargaining agent by a substantial number of employees and determination of an appropriate bargaining unit by the NLRB, which has primary authority in this area**. This cannot be countenanced.

Local No. 3, Int'l Woodworkers of Amer. v. Ketchikan Pulp Co., 611 F.2d 1295, 1299-1300 (9th Cir. 1980) (emphasis added).

Finally, that Plaintiff complains in effect about the outcomes of elections more than a year after NLRB certifications shows all the more that its complaint runs afoul of, and should be deemed preempted by, the NLRA. Under the NLRB's own regulations that govern the timing of submitting objections to elections, there are stringent regulations which require submission of such objections in writing to the Regional Director of the NLRB within seven days after ballots are counted. 29 C.F.R. §102.69(a) and (b). The present lawsuit by its untimely submission circumvents the NLRB policies of fostering labor stability that are advanced by short time frames for submitting objections. Id.

For all of the above reasons the Court should find that the instant lawsuit of Plaintiff is preempted as well independently by Section 9 of the NLRA.

### B. Preemption Of Plaintiff's Second And Third Counts By LMRA Section 301, 29 U.S.C. §185.

In an unnumbered paragraph inserted between paragraphs five and six of the complaint, Plaintiff states that "jurisdiction over the claims . . . arises under Section 301" and there is no mention whatsoever of a claim of supplemental (pendent) jurisdiction of state law claims under 28 USCS § 1367(a). That lead Defendants initially to conclude that the complaint did not assert state law claims. However, in the three page "Statement Of Case" submitted by Plaintiff at the case conference on February 8, 2005, Plaintiff stated that its second count "is a Rhode Island common law claim of breach of the duty of loyalty and noncompetition;" and at the case conference in the court's chambers Plaintiff's counsel orally advised that the third count as well

arose as a Rhode Island common law claim for conversation of funds.[10] Each of these state law claims, in addition to being preempted by the NLRA as discussed supra Part A, is also preempted by Section 301 of the LMRA, 29 U.S.C. §185 and should be dismissed on this additional basis.

The separate branch of federal labor law preemption referenced in this section arises under Section 301 and is founded upon (as is Garmon preemption under the NLRA as discussed in greater detail above) the Supremacy Clause of the United States Constitution. In the case of Section 301 preemption the Supreme Court in Lingle v. Norg Div. of Magic Chef, Inc., 486 U.S. 399, 405-406 (1988) held that Section 301 preempts state law claims where their resolution implicates interpretation or application of a collective bargaining agreement. See also Callaci at page 6 (appendix); Fligotte v. Penn. Truck Line, Inc., 131 F.3d 21, 26 (1st Cir. 1997). Likewise, because Section 301 provides jurisdiction to the federal court as well to interpret union constitutions, the doctrine of preemption enunciated in Lingle applies as well where state law claims (as here) involve application or interpretation of a union constitutions.[11]

The First Circuit has held that preemption under Section 301 exists either because the claim directly is plead as arising under a contract, or because the claim (even if not so plead) will require reference to a labor contract:

> [A] state-law claim can depend upon the meaning of a collective bargaining agreement in either of two distinct ways: on the one hand, a claim can allege the violation of a duty that arises from the CBA itself, or, on the other hand, a claim can require a court to interpret a specific provision of the CBA. "If a state-law claim depends on the meaning of the collective bargaining agreement in

---

[10] Prior to that Defendants proceeded on the basis of the unnumbered paragraph of the complaint that each count arose under Section 301. Given this clarification Defendants reviewed their memorandum of law to include this additional argument regarding Section 301 preemption.

[11] Section 301 has long been interpreted as applying to actions relating to collective bargaining agreements, but also, as here, to union bylaws and constitutions. Woodell v. International Brotherhood of Electrical Workers, 502 U.S. 93, 102 (1991).

> either of these ways -- that is, under Rawson's 'duty' rubric or under Allis-Chalmers's 'interpretation' rubric -- it is preempted." Id.

BIW Deceived v. Local S6, 132 F.3d 824, 829-30 (1st Cir. 1997) (citing Flibotte v. Pennsylvania Truck Lines, 131 F.3d 21 (1st Cir. 1997); United Steelworkers v. Rawson, 495 U.S. 362, 369 (1990); Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985)). Thus, the First Circuit has held that the preemptive effect of Section 301 creates a "significant exception to the well-pleaded complaint rule", and even "artfully pleaded" state law claims are to be treated as federal claims where resolution may require interpretation or application of a contract. BIW Deceived v. Local S6, 132 F.3d 824, 831 (1st Cir. 1997).[12]

Applying the foregoing principles here, the court should reach the same conclusion and find that Plaintiff's second and third counts are plainly preempted by Section 301. As Plaintiff has conceded in its own complaint allegations, the union constitution contains provisions relating to the duty of loyalty and the criteria (e.g., quorums, votes) for enacting salary increases. As such, the court may readily find that the state law claims will invariably require a court to construe such internal union constitutional provisions in determining the scope of the duties owed by Defendants to Plaintiff and therefore Plaintiff's state law claims at Counts II and III may be dismissed for the additional reason that they are completely preempted by Section 301.[13]

---

[12] Applying these principles in Callaci, Judge Lisi found preemption of the duty of loyalty and other similar claims which were dependent on the meaning of the union contract for resolution, even though not pleaded as such. Callaci at 7.

[13] Plaintiff's first count is asserted as a Section 301 claim and therefore is subject to dismissal based upon each of the other arguments set forth herein.

**C. Plaintiff's Claims Should Be Dismissed In Any Event Because They State A Claim For Money Damages, Yet Such Relief Is Not Available Under Section 301 Against Individuals.**

The Court may dismiss all three counts in all respects because Plaintiff seeks money damages from Defendants through such claims, yet money damages against individuals are barred by the express language of Section 301 as well as by precedent applying its provision.

Turning first to the language of Section 301, subdivision "b" of Section 301 states as follows:

> (b) Responsibility for acts of agent; entity for purposes of suit; enforcement of money judgments.
>
> .... Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

29 U.S.C. §185(b) (emphasis added). Here Plaintiff frivolously ignores this plain and unambiguous restriction and seeks money damages against two individuals in this action. Without more, therefore, the Court may find, based upon the plain and unambiguous language of Section 301, that all three causes of action state claims for relief (i.e., money damages) which may not be obtained under Section 301, Section 301 being the sole basis upon which Plaintiff alleges jurisdiction in this matter.

This conclusion is also reinforced by case precedent under Section 301. In the Supreme Court's long standing ruling in Complete Auto Transit, Inc. v. Reis, 451 U.S. 401 (1981), the Court held that individuals may not be held liable for money damages under Section 301, regardless of proof that the action of such individuals damaged the plaintiff. Id. at 417. Plaintiff

can be heard to complaint that this would leave it without a economic remedy. But the Supreme Court recognized this and acknowledged that its ruling "might leave the employer unable to recover for his losses" but nevertheless held that individuals may not be sued for money damages under Section 301. Id. at 407-408; see also, e.g., California Electric Company v. Briley, 939 F.2d 790 (9th Cir. 1991) (reaching same conclusion and barring employer suit for money damages against individuals under Section 301).

Although the ruling in Complete Auto Transit involved an employer suing several individuals under Section 301 for damages for engaging in an improper strike, that difference in the identity of the plaintiff (i.e., an employer in Complete Auto Transit and a union here) is not a material distinction. That is because the rationale that underpinned the Supreme Court's holding was that Congress did not intend to permit actions under Section 301 that would attack individuals for money damages rather than unions or employers, as previously articulated by the Supreme Court in Atkinson v. Sinclar, 370 U.S. 239 (1962).[14]

Cf. Operative Plasterers & Cement Masons International Association v. James E. Benjamin, 776 F. Supp. 1360, 1367-68 (N.D.I. 1991) (distinguishing lawsuit seeking injunctive relief: "Courts have interpreted § 301(b) to preclude suits for money damages, but to allow suits for injunctive relief against union officials. The Seventh Circuit has allowed international unions to pursue § 301(a) claims in order to enforce terms of a trusteeship against a local affiliate and its

[14] In Atkinson the Supreme Court, in the aftermath of a notorious case where individual workers were sued by their employer and financially devastated (i.e., the Danbury Hatters case), reviewed the legislative history of Section 301 and concluded that Congress included the limiting language, quoted above in Section 301(b) because of a "deeply felt congressional reaction to the Danbury Hatters case. . . . and an expression of legislative determination that the aftermath . . . of that decision was not to be permitted to recur." 370 U.S. at 248. Here that same rationale applies insofar as the wide ranging economic damages that Local 134 seeks as well attack individuals financially and the same concerns are implicated.

former officers. Int'l Brotherhood of Boilermakers v. Local Lodge 714, 845 F.2d 687 (7th Cir. 1988) (court allowed international union to sue for injunctive relief against local union and its formers officers to enforce a trusteeship); Int'l Union Allied Industrial Workers v. Local Union, 693 F.2d 666 (7th Cir. 1982) (court allowed suit by international union against local and two of its officers for injunctive relief).").

For the above reasons therefore Plaintiff's complaint may be dismissed alternatively on the grounds that each claim states a claim for which relief (i.e., money damages) cannot be granted against individuals under Section 301.

**D. All Three Claims Are Barred By The Six Month Statute Of Limitations Applicable To Section 301 Suits As Brought Here.**

Regardless of the court's disposition of the above points, the Court may also dismiss the complaint on all three counts separately and independently since the complaint was filed well after the applicable six months statute of limitations for Section 301 claims. In Del Costello v. International Brotherhood of Teamsters, 462 U.S. 151 (1983), the Supreme Court held that an employee's action against his union for breach of the duty of fair representation and against his employer, under Section 301, for breach of a labor agreement, were barred by the six month statute of limitations found in Section 10(b) of the National Labor Relations Act, 159 U.S.C. §160(b). The same period applies here and bars Plaintiff's claims.

The Plaintiff may argue that the state statute of limitations is applicable. However, in a case of this nature the rationale for an alternate statute of limitations does not apply. In Del Costello, the Supreme Court noted this point and then explained why state statutes of limitations for Section 301 actions are often times not appropriate:

> In some circumstances, however, state statutes of limitations can be unsatisfactory vehicles for the enforcement of federal law. In

> these instances, it may be inappropriate to conclude that Congress would choose to adopt state rules at odds with the purpose of the operation of federal substantive law.

462 U.S. at 159. In Del Costello the Supreme Court concluded that the six months statute of limitation of the NLRA was appropriate rather than the longer state statute of limitations for a reason that is entirely applicable here. In particular the shorter time frame under the NLRA was applicable for cases that provided issues analogous to unfair labor practices, where a prompt disposition of claims served the statutory purpose of stabilizing labor relations. Here, as explained in the first argument above, not only is the conduct of Defendants analogous to that evaluated in context of unfair labor practice proceedings, but indeed Counts I, II and III (¶28) should be dismissed because they are preempted by the NLRA.[15]

Based upon the foregoing, since it is undisputed that this action was filed approximately fifteen months after the last event that formed the basis of any claim (July 30, 2003), and more than two years after earlier allegations (such as conversion of salary), all claims are barred by the applicable six month statute of limitations.

### E. In No Event May The International Constitution Be The Basis Of Any Claim Against Defendants Because Local 134 Does Not Have Standing To Enforce That Document.

In this case the Plaintiff is a "Trustee" appointed by the International to operate Local 134. In pursuing Defendants, the International itself has not filed claims against Defendants. Rather, the Plaintiff is the International's Trustee, who is suing solely on behalf of Local 134. To

---

[15] See also Communications Workers of America v. Western Electric Co., 860 F.2d 1137 (1st Cir. 1988) (holding that action to compel arbitration fell within the six month statute of limitations). In Communication Workers the First Circuit held that, although the claim was one to enforce a contract, the federal substantive law policies favoring arbitration required that the Section 10(b) six month limitations period be applied rather than the longer state limitations period

the extent that any of the claims against Defendants are based upon violation of the International Constitution, the Court should strike that aspect of the claim. This is because Local 134 patently does not have standing to sue for breach of the International's Constitution. For this further reason, all allegations relating to the International Constitution should be stricken, and all claims that rely upon said International Constitution should be dismissed.

**F. Plaintiff's Complaint May Be Dismissed In Its Entirety For The Further Reason That It Presents Claims Under Its Union Constitutions, Without Having First Exhausted Intraunion Remedies.**

The Supreme Court has held that prior to a party attacking another for violations of a contract or union constitution under Section 301, there must be an a party "is required to attempt to exhaust any grievance or arbitration remedies provided in the collective-bargaining agreement. Republic Steel Corp. v. Maddox, 379 U.S. 650 (1965). Cf. Clayton v. Automobile Workers, 451 U.S. 679 (1981) (exhaustion of intraunion remedies not always required where futility shown). In this case Plaintiff has failed to plead exhaustion of internal remedies that exist under its Local 134 and International constitutions. Therefore, prior to resorting to court it should have exhausted those internal conflict resolution procedures. Since Plaintiff has not plead that it has done so (and in fact the record should show that it has not), the Court without more may dismiss Plaintiff's claims for the additional reason that Plaintiff has failed to exhaust internal union remedies prior to resort to federal district court under Section 301.

## V. Conclusion

For the above reasons Defendants respectfully request that the Court dismiss all three counts of the complaint in the above-entitled matter.

Respectfully submitted,

On behalf of Defendants,

Karen McAninch and Charles Wood,

By their attorneys,

ASSOCIATE LOCAL COUNSEL:

John W. Dineen, RI Bar #2346
Yessor Glasson & Dineen
Counselors at Law
One Providence Washington Plaza
Providence, RI 02903
Tele. #: 401-331-3550
Fax #: 401-331-9267

Dated: February ~~8~~ 15, 2005

Respectfully submitted,

On behalf of Defendants,

Karen McAninch and Charles Wood,

By their attorneys,

ASSOCIATE COUNSEL,
ADMISSION PRO HAC VICE:

Alan J. McDonald, Esq.
Jack J. Canzoneri, Esq.
McDonald & Associates
153 Cordaville Road, Ste. 210
Southborough, MA 01772
Tele. #: 508-485-6600
Fax #: 508-485-4477

Dated: February ~~8~~ 15, 2005

**Certificate of Service**

I, John W. Dineen, hereby certify that I have this day, by ~~HAND DELIVERY~~ mail served a copy of the foregoing Defendants' Memorandum Of Law In Support of Motion For Judgment On The Pleadings upon Counsel for Plaintiff: (1) Associate Local Counsel, Richard M. Peirce (#0564), Roberts, Carroll, Feldstein & Pierce, Ten Weybosset Street – 8th Floor, Providence, RI 02903 [Tele. #401-521-7000; Fax #: 401-521-1328]; (2) Associate Counsel, Admission Pro Hac Vice, Thomas M. Kennedy, Esq. and Stuart Lichten, Kennedy, Schwartz & Cure, P.C., 113 University Place, New York, NY 10003 [Tele.# 212-358-1500], by Fed Ex overnight.

Dated: February ~~8~~ 15, 2005

John W. Dineen, RI Bar #2346