UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

Peter Rider, as Trustee of Local 134, Service Employees International Union, AFL-CIO
Plaintiff

v. C. A. No. 04-419 T

Karen McAninch and Charles Wood
Defendants

**OBJECTION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

The Plaintiff, Peter Rider, Trustee, objects to the motion of the Defendants for judgment on the pleadings for the reasons set forth in the attached memorandum of law and supporting affidavit.

PLAINTIFF

By Its Attorneys,

RICHARD M. PEIRCE #0564
ROBERTS, CARROLL, FELDSTEIN & PEIRCE
10 Weybosset Street, 8th Floor
Providence, RI 02903-2808
(401) 521-7000 (FAX) (401) 521-1328

OF COUNSEL:

Thomas M. Kennedy
KENNEDY, SCHWARTZ & CURE, P.C.
113 University Place, 7th Floor
New York, New York 10003
(212) 358-1500

20

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

-------------------------------------------------------------x

PETER RIDER, as Trustee of Local 134, Service Employees International Union, AFL-CIO,

Plaintiff, CA 04 419T

- against -

KAREN McANINCH and CHARLES WOOD,

Defendants.

-------------------------------------------------------------x

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

KENNEDY, SCHWARTZ & CURE, P.C.
Attorneys for Plaintiff
113 University Place - 7th Floor
New York, New York 10003
(212) 358-1500

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

-------------------------------------------------------------x

PETER RIDER, as Trustee of Local 134, Service Employees International Union, AFL-CIO,

Plaintiff, CA 04 419T

- against -

KAREN McANINCH and CHARLES WOOD,

Defendants.

-------------------------------------------------------------x

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff Peter Rider, as Trustee of Local 134, Service Employees International Union, AFL-CIO ("Local 134"), submits this memorandum of law in opposition to the motion of defendants Karen McAninch ("McAninch") and Charles Wood ("Wood") for judgment on the pleadings. This is a dispute between Local 134, an unincorporated association, and two of its employees over those employees' use of the association's resources in ways hostile to the association while on the association payroll. This conduct is not in any way regulated by the National Labor Relations Act, 29 U.S.C. § 151 et seq. ("NLRA"), any more than if defendants had been accused of stealing directly from the local union's treasury, or of physically assaulting a union official. Local 134 could not file any sort of unfair labor practice charge with the National Labor Relations Board ("NLRB") against its employees for not carrying out their responsibilities as employees. The NLRB has no jurisdiction over plaintiff's claims, and defendants' motion to dismiss on that ground, and others discussed below, should be denied.

FACTS

Local 134 is a labor union affiliated with the Service Employees International Union, AFL-CIO ("SEIU"). Complaint ¶ 2. The local is the collective bargaining representative for workers at several employers, including Brown University and Providence College. Complaint ¶ 6. Until July 30, 2003, McAninch and Wood were full-time salaried employees of Local 134, respectively holding the titles of Business Agent and Financial Secretary-Treasurer, the two highest-paid positions. Complaint ¶¶ 4-5, 14.

In 2003, while still being paid by Local 134 as its employees, defendants used those resources to engage in activities on behalf of a rival organization, the United Service and Allied Workers of Rhode Island ("USAW"), and against Local 134. Complaint ¶ 14. Wood arranged for the printing of cards by which Local 134 members could authorize USAW, rather than Local 134, to act as the members' collective bargaining representative. Answer ¶ 14. McAninch distributed the authorization cards to Local 134 members at worksites, and gave cards to Local 134 stewards for distribution to members. Defendants' Appendix, Ex. 2, at 7 n.5. Defendants encouraged members to leave defendants' own local union, and assisted Local 134 members in certifying USAW in its place. Complaint ¶¶ 19, 23. At the same time, defendants granted themselves unauthorized salary increases. Complaint ¶ 27.

Plaintiff brings three causes of action, one under Federal law and two supplemental Rhode Island common law claims. First, pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("Section 301"), plaintiff alleges that defendants violated the SEIU Constitution. Complaint ¶¶ 17-21. The second cause of action is a Rhode Island common

law claim of breach of the duty of loyalty and noncompetition. Complaint ¶¶ 22-25. Plaintiff's third cause of action alleges the unlawful conversion of union funds. Complaint ¶¶ 26-29. Plaintiff seeks the equitable remedy of restitution under the first cause of action, Complaint ¶ 30(B), and compensatory damages under the common law claims. Complaint ¶ 30(A).

## ARGUMENT

### I. STANDARD OF REVIEW

A motion for judgment on the pleadings is treated the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Collier v. City of Chicopee, 158 F.3d 601, 602 (1st Cir. 1998). The Court must accept all of the allegations in the Complaint as true, and draw all reasonable inferences in the non-movant's favor. Rockwell v. Cape Cod Hosp., 26 F.3d 254, 255 (1st Cir. 1994). The motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

### II. THE NLRB DOES NOT HAVE JURISDICTION OVER THE CONDUCT OF UNION EMPLOYEES.

Defendants' main argument concerns what defendants describe as "preemption" by the NLRA, Defendants' Memorandum of Law in Support of Motion for Judgment on the Pleadings ("Def. Mem.") 8, although with respect to plaintiff's Federal cause of action, the doctrine of preemption, based on the supremacy of Federal law, would be inapplicable. In any event, the NLRB simply does not have jurisdiction over disputes between a union as an employer and the

union's employees, regarding those employees' work performance, and therefore plaintiff's claims cannot be preempted.

The Supreme Court has held, "When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield." San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 244 (1959). In Garmon, the state courts issued a judgment "on the assumption that the behavior of the petitioning unions constituted an unfair labor practice." Id., at 245. The Court vacated the judgment as preempted by the NLRA's administrative procedures. Id., at 246-47.

This line of cases does not apply to plaintiff's First Cause of Action. The "Garmon doctrine is 'not relevant' to actions within the purview of § 301 . . .." William E. Arnold Co. v. Carpenters Dist. Council of Jacksonville, 417 U.S. 12, 16 (1974)(quoting Teamsters Local 174 v. Lucas Flour Co., 369 U.S. 95, 101 n.9 (1962)). "The authority of the Board to deal with an unfair labor practice . . . is not exclusive and does not destroy the jurisdiction of the courts under § 301." Smith v. Evening News Ass'n, 371 U.S. 195, 197 (1962). "[S]uch actions are judicially cognizable, even where the conduct alleged was arguably protected or prohibited by the National Labor Relations Act because the history of the enactment of § 301 reveals that 'Congress deliberately chose to leave the enforcement of collective agreements to the usual processes of the law.'" Amalgamated Ass'n of Street, Electric Rwy. and Motor Coach Employees v. Lockridge, 403 U.S. 274, 298 (1971)(quoting Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 513 (1962)). Plaintiff's Section 301 claim stands.

The supplemental claims also are not affected. The Supreme Court has "emphasized that a critical inquiry in applying the Garmon rules, where the conduct at issue in the state litigation is said to be arguably prohibited by the Act and hence within the exclusive jurisdiction of the NLRB, is whether the controversy presented to the state court is identical with that which could be presented to the Board." Belknap, Inc. v. Hale, 463 U.S. 491, 510 (1983). In other words, the test is whether the allegedly unlawful acts consisted of "conduct that was part and a parcel of an arguable unfair labor practice." Id. If, on the other hand, the "injury" remedied "has no relevance to the Board's functions," and the "Board can award no damages, impose no penalty, or give any other relief" to the plaintiffs, then the claim is not preempted. Linn v. Plant Guard Workers, 383 U.S. 53, 63 (1966). To be preempted, "the controversy which [the complainant] might have presented to the Labor Board" must be "the same as the controversy presented" under state law. Sears, Roebuck and Co. v. San Diego County Dist. Council of Carpenters, 436 U.S. 180, 198 (1978).

The First Circuit has stated, "It is well-settled that the NLRB enjoys primary jurisdiction over disputes involving unfair labor practices or representational issues." Newspaper Guild of Salem v. Ottaway Newspapers, Inc., 79 F.3d 1273, 1283 (1st Cir. 1996)(citation omitted). For that reason, the Court of Appeals recently noted the importance to preemption analysis that the complainants in a state-law proceeding "could have filed complaints with the NLRB." Local Union No. 12004, United Steelworkers v. Massachusetts, 377 F.3d 64, 79 (1st Cir. 2004)(footnote omitted). In a previous case, the Court found preemption where "the allegations, if found to be true, would constitute a violation of the NLRA." Tamburello v. Comm-Tract Corp., 67 F.3d 973, 977 (1st Cir. 1995)(citation omitted). The appropriate review should "focus

on the conduct at the root of [the] controversy," and determine whether that "very same conduct provides the factual basis for . . . unfair labor practice charges . . . ." Chaulk Services, Inc. v. Massachusetts Comm'n Against Discrimination, 70 F.3d 1361, 1365 (1st Cir. 1995). The Court concluded there that, "at bottom," the allegations were an "example of an unfair labor practice claim of the kind traditionally handled in the first instance by the NLRB." Id., at 1367.

Section 7 of the NLRA concerns rights of employees to organize, to form unions, and to bargain collectively with their employers. 29 U.S.C. § 157. Section 8(a) defines unfair labor practices by employers, while Section 8(b) does the same for labor organizations. 29 U.S.C. § 158(a), (b). The "unfair labor practices provisions of the NLRA regulate the conduct of employers and labor organizations only--not the acts of individuals as individuals." Local 1814, Int'l Longshoreman's Ass'n v. NLRB, 735 F.2d 1384, 1393 (D.C. Cir. 1984)(citation omitted). No part of the law governs claims by a union against its own employees.

Local 134 could not file an unfair labor practice charge against defendants with the NLRB for any reason, since the Board does not have jurisdiction over individuals. Furthermore, an allegation that union employees violated their duties as employees does not state an unfair labor practice, or any arguable claim under the NLRA. The NLRB does not have primary jurisdiction here; indeed, it has no jurisdiction.

Defendants use many of the extra pages granted them by the Court repeating these basic principles without explaining how any of them apply to the Complaint. Def. Mem., at 5-12. By the time defendants get around to explaining how their alleged conduct falls under the NLRB's jurisdiction, defendants entirely miss the point of this action. Of course, as defendants assert, "Section 7 of the NLRA protects the rights of members of a union to have their representation

changed from one union to another and this subsumes the right to ask individuals to sign designation cards, to sign designation cards, to file designation cards and representation petitions with the NLRB, and to vote in an NLRB-supervised election freely and without coercion." Def. Mem., at 13-14 (emphasis in original). This case is not about "the rights of members of a union." If Local 134's members were denied any of the listed rights, either by Brown University, for example, or by Local 134 itself, those members could file an unfair labor practice charge.

This matter concerns employees of a union. McAninch and Wood certainly have the right, as citizens, to circulate authorization cards for rival unions. As employees of Local 134, owing it a duty of loyalty, however, they are liable for the damages Local 134 suffers as a result of their conduct. The difference is illustrated by the obvious point that McAninch and Wood could have avoided any liability to Local 134 by simply resigning from employment prior to the point they took active steps to assist the rival union. They could have remained members of Local 134 without incurring liability but not employees. Defendants contend that their efforts on behalf of USAW are "arguably protected," Def. Mem., at 14, yet even defendants do not claim their simultaneous receipt of a Local 134 paycheck is arguably protected. Otherwise, defendants could argue that their discharge on July 30, 2003, was an unfair labor practice, an absurd contention.

Defendants do assert the equally absurd contention that the "exclusive forum for Plaintiff to raise its [sic] complaint about Defendants' conduct is by filing an unfair labor practice charge with Region One of the NLRB." Def. Mem., at 12. Defendants do not specify what possible charge Local 134 could file against McAninch and Wood. Would it fall under Section 8(a) against an employer, or under 8(b) against a union? What would be Local 134's claim against

McAninch and Wood: refusal to bargain collectively (8(a)(5) or 8(b)(3)), engaging in a secondary boycott (8(b)(4)), or interfering with Local 134's rights to join a union (8(a)(1))? In 30 pages, defendants do not attempt to answer these unanswerable questions.

The holding of the unpublished Report and Recommendation provided by defendants is plainly incorrect. Rhode Island Fed'n of Teachers and Health Professionals v. Callaci, C.A. No. 99-005 ML (D.R.I. Oct. 8, 1999). The Court in that case claimed that the "status of individuals involved" is not "key to whether a claim is preempted," and cited cases the Court described as applying preemption to claims against "third parties." Id., at 17 (citations omitted). The cited cases, however, carve out a narrow exception that actually proves the rule: to be preempted, claims must be "in essence artfully pleaded unfair labor practice charges" that require "determinations as to whether an employer's conduct constitutes an unfair labor practice under NLRA § 8 and whether an employee's actions are protected under NLRA § 7." Richardson v. Kruchko & Fries, 966 F.2d 153, 158 (4th Cir. 1992)(discharged employee alleging anti-union retaliation sued employer's law firm, requiring "court to pass on the legality under the NLRA of precisely the same conduct that is presently before the NLRB"); Brown v. Keystone Consolidated Industries, Inc., 680 F. Supp. 1212, 1223 (N.D. Ill. 1988)(claim against employer's alter ego alleges "same conduct which would form the core of an unfair labor practice presented to the NLRB"); Lumber Production Industrial Workers Local No. 1054 v. West Coast Industrial Relations Ass'n, Inc., 775 F.2d 1042, 1048 (9th Cir. 1985)("union is reasserting the same set of facts that it relied on in its unsuccessful unfair labor practice claim, but this time the suit is directed at the labor consultants").

These cases involve the functional equivalent of unfair labor practices against stand-ins for the employer: alter ego corporations, lawyers, labor consultants. McAninch and Wood are not stand-ins for an employer or a union. They are being sued as individuals, for breaching common law duties owed between an employee and employer that are not regulated by the NLRA. The union's allegations against defendants could not be brought as an unfair labor practice charge, and are not preempted.

## III. DEFENDANTS ARE NOT IMMUNE FROM LIABILITY UNDER SECTION 301.

Defendants claim the First Cause of Action should be dismissed because plaintiff is seeking "money damages," which defendants contend are unavailable under Section 301. Def. Mem., at 25. Plaintiff, however, is requesting the equitable relief of restitution under his Federal claim.

Section 301 provides, "Any money judgment against a labor organization . . . shall be enforceable only against the organization . . ., and shall not be enforceable against any individual member or his assets." 29 U.S.C. § 185(b). The Supreme Court has held that this portion of the statute bars damage actions against individual employees for violation of a collective bargaining agreement. Complete Auto Transit, Inc. v. Reis, 451 U.S. 401, 417 (1981). "There is, however, substantial authority in the lower courts to the effect that individual defendants may be subject to liability for violations of union constitutions." Shea v. McCarthy, 953 F.2d 29, 32 (2d Cir. 1992)(citations omitted). Defendants concede that individuals may be liable under Section 301, at least for equitable relief. Def. Mem., at 26-27.

Section 301 claims by unions against individual members have been upheld by courts in circumstances similar to the instant case, even where the relief sought involved the payment of money. In International Longshoremen's Ass'n v. Spear, Wilderman, Borish, Endy, Spear & Runckel, 1998 WESTLAW 83684 (E.D. Pa. Feb. 25, 1998), a union sued a former officer of a local for, inter alia, breach of fiduciary duties. Id., at *1. A Section 301 claim was brought for breach of the union's constitution, "specifically its statement of purpose. That claim, which seeks equitable relief in the form of restitution of salary paid to [defendant] during the period when he was allegedly violating his duty to act in the best interests of Local 1332, presents an arguable basis for subject matter jurisdiction." Id., at *8. See also, International Union of Electronic, Electrical, Salaried, Machine & Furniture Workers v. Statham, 97 F.3d 1416, 1421-22 (11th Cir. 1996)(union alleging breach of fiduciary duties and of union constitution by local officers may seek $62,000 in proceeds from land sale under Section 301); National Ass'n of Basketball Referees v. Middleton, 688 F. Supp. 131, 134-35 (S.D.N.Y. 1988)(union may sue members for $30,000 in special assessments under Section 301); Mayes v. Local 106, Int'l Union of Operating Engineers, 739 F. Supp. 744, 746-48 (N.D.N.Y. 1990)(union may sue member under Section 301 for expenses incurred in defense of bad-faith charges; claim for breach of union's constitution's provision for "penalties for activities which create dissension among the membership or interfere with the Union's activities"); International B'hood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers v. Local Lodge D111 of the Cement, Lime, Gypsum and Allied Workers, 681 F. Supp. 1570, 1572 (S.D. Ga. 1987), aff'd, 858 F.2d 1559 (11th Cir. 1988)(Section 301 claim against local officers for return of "any and all funds"); Operative Plasterers & Cement Masons Int'l Ass'n v. Benjamin, 776 F. Supp. 1360, 1366-68

(N.D. Ind. 1991)(Section 301 claim against former local officer for return of union property and supplemental state law claims for monetary damages).

Plaintiff here seeks restitution for union funds spent on defendants' activities on behalf of a competitor union. Such relief would include recoupment of defendants' unauthorized salary and any other expenditures, such as printing costs, incurred in connection with defendants' campaign. Complaint ¶ 30(B); Answer ¶ 14. Monetary damages are sought as part of plaintiff's supplemental state law claims.

## IV. IT IS LONG SETTLED THAT A LOCAL UNION HAS STANDING TO BRING AN ACTION FOR BREACH OF AN INTERNATIONAL CONSTITUTION.

Defendants assert, "Local 134 patently does not have standing to sue for breach of the International's Constitution. For this further reason, all allegations relating to the International Constitution should be stricken, and all claims that rely upon said International Constitution should be dismissed." Def. Mem., at 29. The Supreme Court "patently" rejected defendants' argument 24 years ago. United Ass'n of Journeymen and Apprentices of the Plumbing and Pipefitting Industry v. Local 334, United Ass'n of Journeymen and Apprentices of the Plumbing and Pipefitting Industry, 452 U.S. 615 (1981). An international union "constitution may be fairly characterized as a contract between labor organizations," i.e., local unions, and therefore a local union may bring a suit alleging a violation of the international constitution pursuant to Section 301. Id., at 616, 619; see, e.g., Truck Drivers, Chauffeurs, and Helpers Union, Local 42 v. International B'hood of Teamsters, Chauffeurs, Warehousemen and Helpers, 482 F. Supp. 266, 270 (D. Mass. 1979)(claim by local union alleging breach of international union constitution).

An international union constitution is a contract between the international and the locals, between the international and its members, and between and among the members themselves. Shea, 953 F.2d, at 31-32. Any of those entities has standing to sue for violations of the international constitution.

V. THE BREACH OF CONTRACT STATUTE OF LIMITATIONS APPLIES.

Section 301 does not contain a limitations period. Courts must therefore "'borrow' the most suitable statute or other rule of timeliness from some other source." DelCostello v. International B'hood of Teamsters, 462 U.S. 151, 158 (1983). The Supreme Court has held that in straightforward Section 301 suits for breach of a collective bargaining agreement, the state contract limitations period applies. UAW v. Hoosier Cardinal Corp., 383 U.S. 696 (1966). The First Circuit, as well, has applied the contract statute of limitations to a wrongful discharge suit against an employer alleging violation of a collective bargaining agreement's just cause provision. Cabarga Cruz v. Fundacion Educativa Ana G. Mendez, 822 F.2d 188, 191 (1st Cir. 1987).

Therefore, courts have held that "claims under the union constitution are subject to [the] statute of limitations for contract actions . . .." Papianni v. International Ass'n of Bridge, Structural and Ornamental Iron Workers, 622 F. Supp. 1559, 1571-76 (D.N.J. 1985); Tile, Marble, Terrazzo, Finishers, Shopworkers and Granite Cutters Int'l Union v. Local 221, Tile, Marble, Terrazzo, Finishers, Shopworkers and Granite Cutters Int'l Union, 683 F. Supp. 814, 816-17 (M.D. Ga. 1988); Rodonich v. House Wreckers Union Local 95, 624 F. Supp. 678, 683

(S.D.N.Y. 1985). The Rhode Island the statute of limitations for contract suits is ten years. R.I. Gen. Laws § 9-1-13 (a) (2004). The action is therefore timely.

## VI. THE STATE LAW CLAIMS ARE NOT PREEMPTED BY SECTION 301.

Defendants claim that the second and third causes of action are preempted by Section 301 because the state law claims will require the Court to construe provisions of the Local 134 Constitution. Def. Mem., at 22-24. A local union constitution, however, is not a contract "between . . . labor organizations," as required by Section 301. Hotel & Restaurant Employees Local 400 v. Svacek, 431 F.2d 705, 706 (9th Cir. 1970). Since the Local 134 Constitution is not a Section 301 agreement, even if the state law claims required interpretation of its terms, they would not be preempted by Federal law.

The Supreme Court has held that "an application of state law is preempted by § 301 . . . only if such application requires the interpretation of a [Section 301] agreement." Lingle v. Norge Div'n of Magic Chef, Inc., 486 U.S. 399, 413 (1988)(footnote omitted). Defendants do not contend, nor could they contend, that the two Rhode Island law claims, alleging breach of the duty of loyalty and conversion, have anything to do with the SEIU Constitution, which prohibits injuring or undermining the interests of other SEIU members. Affidavit of Stuart Lichten ("Lichten Aff."), Ex. A, Art. XVI, § 1. The Rhode Island claims require no reference to the SEIU Constitution. Callaci, of course, is distinguishable since Callaci was a member of a staff union which was a party to a collective bargaining agreement with the plaintiff union-employer. Id., at 6-8. Defendants here were not members of a staff union, and there is no collective bargaining agreement to construe.

## VII. THE SEIU CONSTITUTION DOES NOT REQUIRE EXHAUSTION OF INTERNAL REMEDIES IN THESE CIRCUMSTANCES.

Defendants claim that the Complaint should be dismissed because plaintiff "has failed to exhaust internal union remedies . . .." Def. Mem., at 29. There are no internal union remedies to exhaust. The SEIU Constitution requires exhaustion only in actions brought against the SEIU, a local union, any other "affiliated body," or "officers thereof." Lichten Aff., Ex. A, Art. XXIII, ¶ A. Since defendants are not union officers, the exhaustion obligation is inapplicable. Furthermore, the union could not bring internal disciplinary charges of misconduct against defendants, if that could even be considered an "internal remedy," because defendants are no longer SEIU members and therefore are not subject to discipline by the union. See, Ricks v. Simons, 759 F. Supp. 918, 922 (D.D.C. 1991)("pursuit of such charges when [plaintiff] was no longer [union] member . . . would have made such proceedings a costly futility absent any jurisdiction to punish him"). "A union member has a right to resign from a union," Basilicato v. IATSE, 479 F. Supp. 1232, 1243 (D. Conn. 1979), aff'd, 628 F.2d 1344 (2d Cir. 1980), and once she does so, she is out of reach of the union's disciplinary powers. There are no internal union remedies here, therefore, that are either required or available to plaintiff.

## CONCLUSION

For the foregoing reasons, defendants' motion for judgment on the pleadings should be denied.

Dated: March 14, 2005

KENNEDY, SCHWARTZ & CURE, P.C.

By: Thomas M. Kennedy
113 University Place, 7th Floor
New York, New York 10003
(212) 358-1500

ROBERTS, CARROLL, FELDSTEIN & PEIRCE

By: Richard M. Peirce
Ten Weybosset Street, 8th Floor
Providence, Rhode Island 02903
(401) 521-7000

Attorneys for Plaintiff

CERTIFICATE OF SERVICE

STUART LICHTEN certifies that on March 14, 2005, the attached Plaintiff's Memorandum of Law in Opposition to Motion for Judgment on the Pleadings, and supporting Affidavit of Stuart Lichten, were served by overnight delivery upon John W. Dineen, Esq., Yessor Glasson & Dineen, One Providence Washington Plaza, Providence, Rhode Island 02903, and Jack J. Canzoneri, Esq., McDonald & Associates, 153 Cordaville Road, Suite 210, Southborough, Massachusetts 01722, attorneys for defendants.

Dated: New York, New York
March 14, 2005

STUART LICHTEN