UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

PETER RIDER, as Trustee of Local 134,      :
Service Employees International Union,    :
AFL-CIO                                  :
                                        :
        v.                           :        C.A. No. 04-419T
                                        :
KAREN McANINCH and              :
CHARLES WOOD                 :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

Before the Court is Defendants' Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c) ("Motion for Judgment" or "Motion") (Document No. 16).  Defendants seek dismissal of Plaintiff's Complaint on grounds of federal preemption under both the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151, et seq., and Section 301 of the Labor Management Relations Act ("Section 301"), 29 U.S.C. § 185, immunity from money damages under Section 301, failure to exhaust intraunion remedies, statute of limitations and lack of standing.  This matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and Local R. 32(c).  A hearing was held on May 31, 2005.  After reviewing the memoranda submitted by the parties and performing independent research, I recommend that Defendants' Motion for Judgment (Document No. 16) be GRANTED.

## Facts and Travel

Plaintiff, in his capacity as Trustee for SEIU Local 134, filed this action on September 29, 2004 pursuant to Section 301 and Rhode Island common law to "recover damages for unlawful receipt of salary" by Defendants Karen McAninch and Charles Wood, former Local 134 employees, and "to recover damages for said Defendants' breach of their common law duty of loyalty to Local 134." Compl. ¶ 1.

Plaintiff alleges the following:  Local 134 is a labor organization affiliated with the Service Employees International Union, AFL-CIO ("SEIU") and subject to the SEIU Constitution. Compl. ¶ 2. It is the collective bargaining representative for employees at several Rhode Island employers, including Brown University and Providence College. Compl. ¶ 6. Until July 30, 2003, Defendants McAninch and Wood were full-time salaried employees of Local 134, respectively holding the titles of Business Agent and Financial Secretary Treasurer. Compl. ¶¶ 4-5. Defendants McAninch and Wood were also members of Local 134 and bound by its and the SEIU's Constitutions. Id.

In 2003, while still being paid as employees of Local 134, Defendants engaged in activities on behalf of a new rival labor organization, the United Service and Allied Workers of Rhode Island ("USAW"), and against the interests of Local 134. Compl. ¶ 14. Wood arranged for the printing of cards by which Local 134 members could authorize USAW, rather than Local 134, to act as their collective bargaining representative. Answer ¶ 14. McAninch assisted Local 134 members in distributing the authorization cards to Local 134 members at worksites, and gave cards to Local 134 stewards for distribution to members. Defs.' App., Ex. 2, at 7 n.5. Defendants demeaned Local 134 in the eyes of its members, encouraged members to leave Local 134, and assisted Local 134 members

-2-

in certifying USAW in its place.  Compl. ¶¶ 19-20, 23.  At the same time, Defendants granted themselves salary increases of more than 3% per year in 2002 and 2003 which were "never lawfully approved by the membership of Local 134" in violation of Local 134's Constitution.  Compl. ¶¶ 12-13, 27.

Although the Complaint is not a model of clarity, Plaintiff indicated at the hearing that he brings three causes of action against Defendants – one under federal law and two supplemental Rhode Island common law claims.  Plaintiff's federal claim, brought pursuant to Section 301, alleges that Defendants' disloyalty violated Article XVI of the SEIU Constitution.  Compl. ¶¶ 16-21.  Plaintiff's first Rhode Island common law claim alleges a breach of the duty of loyalty and noncompetition.  Compl. ¶¶ 22-25.  Plaintiff's second Rhode Island common law claim alleges a cause of action for the unlawful conversion of Local 134 funds by Defendants.  Compl. ¶¶ 26-29.  Although Plaintiff's Complaint plainly contains an allegation of monetary damages for "decline in membership and loss of income," Compl. ¶ 21, Plaintiff's opposition to Defendants' Motion "clarifies" that Plaintiff seeks only the equitable remedy of restitution of salary paid to Defendants under the Section 301 cause of action, Compl. ¶ 30(B), and compensatory damages, including lost dues income, under the Rhode Island common law claims.  Compl. ¶ 30(A).  Pl.'s Mem. in Opp'n at p. 3.

## Standard of Review

A motion under Fed. R. Civ. P. 12(c) will "ordinarily warrant the same treatment" as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  Collier v. City of Chicopee, 158 F.3d 601, 602 (1st Cir. 1998).  That treatment includes accepting all allegations in the

complaint as true and drawing all reasonable inferences in favor of the non-movant. See Rockwell v. Cape Cod Hosp., 26 F.3d 254, 255 (1st Cir. 1994). Furthermore, the court should not dismiss the action pursuant to Rules 12(b)(6) or 12(c) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Estelle v. Gamble, 429 U.S. 97, 106 (1976); and Kiely v. Raytheon Co., 105 F.3d 734, 735 (1st Cir. 1997).

Like Rule 12(b)(6), Rule 12(c) provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...." Finally, the defense that a plaintiff has failed to state a claim for which relief may be granted may be asserted "by motion for judgment on the pleadings." Fed. R. Civ. P. 12(h)(2).

### Discussion

### A.    R.I. Fed'n of Teachers and Health Prof'ls, AFT, AFL-CIO v. Callaci

The first issue to address is whether the ruling of this District Court in R.I. Fed'n of Teachers and Health Prof'ls, AFT, AFL-CIO  v. Callaci, C.A. No. 99-05ML (the "Callaci case"), provides applicable law for the present case. Although there are some factual differences between the two cases, both cases fundamentally grow out of a labor union's claim of disloyalty brought against a former employee.

In Callaci, the plaintiff labor union argued that its employee improperly assisted and induced locals to disaffiliate from it and to affiliate with a new union formed with the defendant/employee's support and assistance. Similarly, in this case, Local 134 argues that its employees improperly

assisted and induced individual union members to change representation to a new union formed with the Defendants/employees' support and assistance. In both cases, the labor union alleged "harm" due to its resulting loss of membership including the loss of dues income and sought the return of salary paid to its former and allegedly "disloyal" employee(s).

The parties to this case provided the Court with extensive briefing regarding whether this Court should follow the analysis applied in Magistrate Judge David L. Martin's October 8, 1999 Report and Recommendation (the "R&R") in the Callaci case, which recommended that the District Court grant Defendant Callaci's Motion for Judgment on the Pleadings, or in the alternative, his Motion for Summary Judgment. That R&R was adopted by District Judge Mary M. Lisi on October 27, 1999, after review and absent objection. Final Judgment entered for Defendant Callaci, and no appeal was taken. Defendants urge the Court to follow the Callaci R&R regarding the federal preemption analysis. Plaintiff counters that the holding in the Callaci R&R as to Section 301 preemption is not controlling because the Callaci case is factually distinguishable from this one, and the holding as to NLRA preemption is "plainly incorrect."

Plaintiff contends that the Callaci case is factually distinguishable because, unlike this case, Callaci's employment by a labor union was itself governed by a collective bargaining agreement specifically enforceable under Section 301. Callaci was a member of a "staff union." In other words, Callaci was employed by a labor union as a staff member, and he and his fellow staff members were part of their own labor union established to negotiate with their employer/labor union. This factual distinction pointed out by Plaintiff is simply not controlling. Plaintiff is correct that Defendants in this case were not part of a "staff union" or employed pursuant to a collective

bargaining agreement. However, Plaintiff itself alleges that Defendants, as "members and officers of Local 134," Compl. ¶ 9, were bound by, and that their disloyal conduct violated, the Constitutions of Local 134 and the SEIU. As is more fully discussed below, an international union constitution, just like a collective bargaining agreement, is a "contract" within the meaning and scope of Section 301's jurisdiction. Thus, the factual distinction relied upon by Plaintiff is irrelevant as a matter of law.

The Court now considers the applicability of specific portions of the <u>Callaci</u> case to the present controversy. First, this Court has reviewed Judge Martin's (and subsequently adopted by Judge Lisi) NLRA preemption analysis in the <u>Callaci</u> case in detail and rejects Plaintiff's claim that it is "plainly incorrect." To the contrary, this Court finds the analysis to be thorough and persuasive. This Court finds the reasoning and outcome in the <u>Callaci</u> case to be both correct and applicable to this case and thus will follow the same analysis. Because of the close factual parallels between the two cases, it would be an incongruous result if this Court were to conclude that the Defendants in this case were subject to potential financial liability, including return of salary, while the defendant in the <u>Callaci</u> case was not. Therefore, after a review of the <u>Callaci</u> case, the Court will use its NLRA preemption analysis as a guide in the present case.

Turning next to Section 301 preemption, Judge Martin held, in the <u>Callaci</u> case, that the union's claims alleging breach of fiduciary duty, breach of contract, and fraud, were "patently dependent on the meaning of the staff [collective bargaining agreement]" and thus were "preempted by § 301." <u>Callaci</u> R&R, p. 6-7. In this case, Plaintiff alleges that this Court has subject matter

jurisdiction under Section 301 over its claim that Defendants violated the SEIU Constitution.[1]  In

particular, Plaintiff alleges that Defendants' conduct violated Article XVI, Section 1, which provides

as follows:

> No member of this International Union shall injure the interests of
> another member by undermining such member in connection with
> wages or financial status or by any other act, direct or indirect, which
> would wrongfully jeopardize a member's office or standing.

Just as in the <u>Callaci</u> case, Plaintiff's claims of breach of duty of loyalty/noncompetition and

conversion of funds are patently dependent upon the meaning of an instrument governed by Section

301 – in this case, the SEIU Constitution.  An international union constitution is a "contract" within

the meaning of Section 301 between the international and its locals, between the international and

its members and between and among the members themselves.  <u>See</u>, <u>e.g.</u>, <u>Shea v. McCarthy</u>, 953

F.2d 29, 31-32 (2nd Cir. 1992).  By filing suit in this District Court and invoking its federal question

jurisdiction through Section 301, Plaintiff effectively concedes this point.  Thus, the <u>Callaci</u> case

guides this Court's interpretation of the Section 301 argument.

This Court has thoroughly reviewed <u>Callaci</u> and finds it to be persuasive precedent and an

applicable guide in analyzing the parallel issues presented in the present case.  Having determined

that <u>Callaci</u> serves as a guide in this case, the Court now turns to consideration of the merits of

Defendants' Motion.

---

[1]  Plaintiff also alleges that Defendants violated the Local 134 Constitution (Articles V and XIV) by failing to obtain proper authorization for 2002 and 2003 wage increases.  At the hearing, both parties agreed that Section 301 does not provide jurisdiction for claimed violations of a local union's constitution and that the only basis for jurisdiction over such a claim in this Court is discretionary, supplemental jurisdiction under 28 U.S.C. § 1367.

## B.    NLRA Preemption

The NLRA "is a comprehensive code passed by Congress to regulate labor relations" including unfair labor practices and representational proceedings in the private sector. Nash v. Florida Indus. Comm'n, 389 U.S. 235, 238 (1967). "The NLRA reflects congressional intent to create a uniform, nationwide body of labor law interpreted by a centralized expert agency – the National Labor Relations Board (NLRB)." Tamburello v. Comm-Tract Corp., 67 F.3d 973, 976 (1st Cir. 1995). "It is well-settled that the NLRB enjoys primary jurisdiction over disputes involving unfair labor practices or representational issues." Newspaper Guild of Salem, Local 105 v. Ottaway Newspapers, Inc., 79 F.3d 1273, 1283 (1st Cir. 1996). "When an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the [NLRB] if the danger of state interference with national policy is to be averted." San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 245 (1959). The Garmon holding was more recently summarized by the Supreme Court as follows:

> State regulations and causes of action are presumptively preempted if they concern conduct that is <u>actually or arguably either prohibited or protected</u> by the Act. The state regulation or cause of action may, however, be sustained if the behavior to be regulated is behavior that is of only peripheral concern to the federal law or touches interests deeply rooted in local feeling and responsibility. In such cases, the state's interest in controlling or remedying the effects of the conduct is balanced against both the interference with the [National Labor Relations] Board's ability to adjudicate controversies committed to it by the Act, and the risk that the state will sanction conduct that the Act protects.

Belknap, Inc. v. Hale, 463 U.S. 491, 498-99 (1983) (emphasis added) (citations omitted).

In this case, Defendants argue that the conduct challenged by Plaintiff in his Complaint is either "arguably protected or prohibited" by the NLRA and thus the Complaint is preempted. Defendants assert that their challenged actions constitute "concerted activities for the purpose of collective bargaining or other mutual aid or protection" protected under Section 7 of the NLRA. 29 U.S.C. § 157.   Plaintiff counters that <u>Garmon</u> preemption is inapplicable to a dispute between a union and its employees.   However, in considering a similar argument in the <u>Callaci</u> case, Judge Martin reasoned that "[t]he key to whether a claim is preempted is the activity at issue in the action and not necessarily the status of individuals involved in that activity." <u>Callaci</u> R&R, p. 17.   He then concluded that Callaci's challenged activities as a "disloyal" union employee working in support of a competing union arguably fell "under the NLRA's purview and, therefore, are preempted." <u>Id.</u> at 18.

Plaintiff concedes that Defendants and Local 134's members have "a right [under Section 7 of the NLRA] to form and join any labor organization of their choice." Compl. ¶ 14.   Section 7 guarantees employees the right to engage in "concerted activities" not only for purposes of self-organization, but also "for the purpose of...mutual aid or protection...." See <u>Eastex, Inc. v. N.L.R.B.</u>, 437 U.S. 556, 564 (1978) (mutual aid clause of Section 7 "was intended to protect employees when they engage in otherwise proper concerted activities in support of employees of employers other than their own."). Plaintiff alleges that Defendants "engaged in organizing activities on behalf of a different labor union that was attempting to convince members of Local 134 to abandon Local 134 and enroll as members" of the competing union.   Compl. ¶ 14.   However, Plaintiff argues that Defendants could not lawfully exercise these rights because of their status as Local 134 employees

and because the exercise of such rights under these circumstances was "contrary to the interests of Local 134." Id. Defendants do not dispute Local 134's right to terminate their employment but contends that the NLRA preempts Plaintiff's efforts on behalf of Local 134 to further penalize their allegedly disloyal conduct. This Court agrees.

In conducting this analysis, it is important to keep in mind that this Court need not determine whether the alleged conduct of Defendants is actually prohibited or protected by the NLRA. Rather, it is sufficient that such conduct is "arguably" prohibited or protected since it is for the NLRB, not the courts, to make such determinations. For instance, in SEIU, Local 1 v. Jaos, Case No. 13-CA-41636, 2004 WL 3023790 (NLRB Div. of Judges, Dec. 28, 2004), an Administrative Law Judge ("ALJ") of the NLRB considered whether an SEIU Local violated the NLRA by terminating the employment of one of its paid representative/organizers for engaging in protected concerted activity contrary to its interests. The ALJ ultimately balanced the former employee's Section 7 rights against the union's "legitimate interests in loyalty and internal unity" and determined that the employee's termination did not violate the NLRA. See also IUOE, Local 370 and Thoreson, 341 NLRB No. 114, 2004 WL 963356 (2004) (union did not violate the NLRA by discharging a "disloyal" employee).

In the Callaci case, Judge Martin recognized that a dispute for representative status between two competing labor organizations, such as the dispute underlying this case, squarely "falls within NLRA preemption." Callaci R&R, p. 15. In Penn. Nurses Ass'n v. Penn. State Educ. Ass'n, 90 F.3d 797 (3rd Cir. 1996), the Third Circuit analyzed the issue of NLRA preemption in a similar dispute involving rival labor unions. It held that state common law tort claims, including one for unfair

competition, brought by a labor union against allegedly "disloyal" former employees were preempted by the NLRA. It reasoned that "[c]onduct which undermines the union representing a unit of employees, and thereby induces those employees to change their affiliation, arguably 'constrains or coerces' those employees in their ability to exercise their free choice of an exclusive representative." Id. at 802 (quoting 29 U.S.C. § 158(b)).

In this case, Plaintiff similarly claims that Local 134's former employees "demean[ed]" Local 134 to its members, "encourage[d] and solicit[ed]" Local 134 members to abandon membership and thus "undermined the remaining members of Local 134." Compl. ¶¶ 16, 18, 20. Since Plaintiff's allegations arise directly out of a dispute for representative status between two competing labor organizations and implicate conduct arguably protected or prohibited under Section 7 of the NLRA, Plaintiff's claims against Defendants in this case are preempted by the NLRA.

**C.   Section 301 Preemption / Immunity**

In addition to arguing NLRA preemption, Defendants alternatively contend that Plaintiff's state common law claims are preempted by Section 301. Defendants also contend that all of Plaintiff's claims should be dismissed because they seek money damages which are not available from individuals under Section 301.

As "clarified" for the Court, Plaintiff's Complaint contains one count brought under Section 301. This count is entitled "Breach of Duty of Loyalty" and is based on an alleged violation by Defendants of Article XVI, Section 1 of the SEIU Constitution. Although Plaintiff now indicates that it seeks only the "equitable remedy" of restitution of salary under Section 301, the first count plainly alleges other monetary damages for "decline in membership and loss of income" estimated

-11-

at approximately $135,000.00.  Compl. ¶ 21.  Plaintiff's second count is entitled "Breach of

Common Law Duty of Non-Competition" and contains nearly identical allegations to the first Count

including the claim that Defendants improperly "solicit[ed] members of Local 134 to abandon it in

favor of another organization."  Compl. ¶ 23.  In fact, the second count asserts that Defendants

"owed [Local 134] a <u>duty of loyalty</u> to refrain from soliciting its membership and competing directly

with Local 134 for membership" and, identical to count one, alleges damages in the "amount of

$135,000."  Compl. ¶¶ 24, 25.  (emphasis added).

The third Count is entitled "Conversion of Local 134 Funds" and similarly attacks allegedly

disloyal conduct of Defendants.  If true, this conduct would necessarily injure and undermine the

financial interests of Local 134 members as protected by Article XVI of the SEIU Constitution.  <u>See</u>

Compl. ¶¶ 15 and 16.[2]

As noted above, Plaintiff's first Count, brought pursuant to Section 301, alleges that

Defendants' disloyalty violated Article XVI of the SEIU Constitution. Compl. ¶¶ 16-21. Although

Section 301 speaks in terms of "suits for violation of contracts between" labor organizations, 29

U.S.C. § 185(a), the Courts have recognized that a claim against former union officials individually

based on an international union constitution is a "contract" claim subject to Section 301 jurisdiction.

<u>See, e.g.</u>, <u>Int'l Union of Elec., Elec., Salaried, Machine & Furniture Workers v. Statham</u>, 97 F.3d

1416, 1421 (11th Cir. 1996).  The Supreme Court has held that the word "between" in Section 301

---

[2] As noted previously in footnote 1, the claim that Defendants violated Local 134's Constitution by failing to obtain proper authorization for 2002 and 2003 wage increases does not trigger Section 301 jurisdiction. <u>See</u> <u>Korzen v. Local Union 705</u>, 75 F.3d 285, 288 (7th Cir. 1996) (local union constitutions are not contracts governed by Section 301); and <u>Williams v. Local Union 911</u>, 31 F. Supp. 2d 40, 43 (D.R.I. 1998) (same as to local union by-laws).

-12-

refers to the word "contracts" and not the word "suits." <u>Smith v. Evening News Ass'n</u>, 371 U.S. 195, 198 (1962). In this case, Plaintiff properly invokes Section 301 based on an alleged violation of the SEIU Constitution. <u>See Wooddell v. Int'l Bhd. of Elec. Workers</u>, 502 U.S. 93, 100-01 (1991) (subject matter jurisdiction under Section 301 extends to suits on union constitutions involving individual union members).

Section 301 preempts a state-law claim "if the resolution of [that] claim depends upon the meaning" of a contract covered by Section 301. <u>Lingle v. Norge Div. of Magic Chef, Inc.</u>, 486 U.S. 399, 405-06 (1988). In the First Circuit, a state common law claim can "depend" on the meaning of a Section 301 contract in two ways. <u>Flibotte v. Penn. Truck Lines, Inc.</u>, 131 F.3d 21, 26 (1st Cir. 1997). A claim may depend on a Section 301 contract (1) because "it alleges conduct that arguably constitutes a breach of a duty that arises pursuant to" such contract or (2) because "its resolution arguably hinges upon an interpretation of" such contract. <u>Id.</u> (citing <u>United Steelworkers of Am. v. Rawson</u>, 495 U.S. 362, 369 (1990); and <u>Allis-Chalmers Corp. v. Lueck</u>, 471 U.S. 202, 220 (1985)). If a state common law claim depends on the meaning of a Section 301 contract, such as an international union constitution, in either of these two ways, it is preempted by Section 301. This Court concludes that, under either of these two tests, Plaintiff's state common law claims against Defendants for breach of duty of non-competition and conversion (other than the salary increase claim, Compl. ¶ 27) are preempted by Section 301.

Plaintiff alleges that Defendants engaged in a series of disloyal acts while members and employees of Local 134. Plaintiff asserts that Defendants' disloyalty "severely prejudiced" the "interests of the remaining members of Local 134" and "undermined [them] in connection with their

-13-

wages and financial status." Compl. ¶¶ 15, 16.  These allegations arise directly from the obligations of Defendants as SEIU members under Article XVI, Section 1 of the SEIU Constitution.  Although Plaintiff attempts to distinguish his claims between federal (Section 301) and state common law claims, it is a distinction without a difference.  All three Counts allege a related series of events aimed at promoting the interests of USAW to the detriment of Local 134 and its members.  The only exception are the claims of unauthorized 2002 and 2003 salary increases which both parties agree arise under Local 134's Constitution and do not trigger Section 301 jurisdiction.

Defendants in this case are sued in their dual capacities as employees of Local 134 and as members of Local 134 and the SEIU.  As members of the SEIU, Plaintiff alleges that Defendants were "bound by" the SEIU's Constitution.  It is impossible in this case to determine which "hat" (union member or union employee) Defendants were wearing at the time they allegedly committed the disloyal acts.  In fact, Plaintiff's Complaint does not attempt to differentiate Defendants' actions, and it is reasonable to infer from the Complaint as a whole that Plaintiff alleges that Defendants were acting in both their capacities as members and employees at all relevant times.

No matter how Plaintiff describes it (disloyalty, unfair competition, misappropriation of resources, etc.), the bottom line is that Plaintiff is alleging that Defendants engaged in "disloyal conduct" by assisting a competing labor organization.  Since the totality of such alleged disloyal conduct "arguably constitutes a breach of a duty" arising under Article XVI of the SEIU Constitution, Plaintiff's state common law claims are preempted by Section 301.  Similarly, the resolution of Plaintiff's state common law claims "arguably hinges upon" the interpretation of Defendants' obligations to fellow union members under Article XVI of the SEIU Constitution.  The

-14-

gravamen of Plaintiff's Complaint is disloyalty and, thus, it necessarily implicates the meaning of Article XVI, Section 1 which prohibits any member, such as Defendants, from engaging in behavior injurious of the interests of fellow union members.

In addition to arguing Section 301 preemption of Plaintiff's state common law claims, Defendants contend that Plaintiff's entire Complaint should be dismissed because it seeks money damages which are not available from individuals under Section 301. Under Section 301, 29 U.S.C. § 185(b), a "money judgment" obtained thereunder "shall not be enforceable against any individual member or his assets." "Courts have interpreted § 301(b) to preclude suits for money damages, but to allow suits for injunctive relief against union officials." Operative Plasterers & Cement Masons Int'l Ass'n v. Benjamin, 776 F. Supp. 1360, 1367 (N.D. Ind. 1991) (individuals are subject to liability on claims for equitable relief under Section 301 but not for money damages). See also Shea v. McCarthy, 953 F.2d 29, 32 (2ⁿᵈ Cir. 1992) (individual defendants may be subject to equitable not monetary liability for violations of union constitutions); and Int'l Bhd. of Boilermakers v. Freeman, 683 F. Supp. 1190, 1191 (N.D. Ill. 1988) (individuals are subject to liability on claims for equitable relief under Section 301 but not for money damages).

Based on this remedial restriction, Plaintiff strategically describes his claim under Section 301 as one seeking "equitable restitution" of salary rather than money damages. Plaintiff's Section 301 claim (the first cause of action) alleges that Local 134 was "damaged" by Defendants' actions and that "the amount of this damage is estimated to be approximately $135,000." Compl. ¶ 21. Plaintiff's "Introduction" to its Complaint describes this suit as one "to recover damages" from

Defendants. Plaintiff's attempt to disguise his claim as one seeking only equitable relief is not convincing.

Plaintiff cites only one case, Int'l Longshoremen's Ass'n v. Spear, No. 97-2438, 1998 WL 83684 (E.D. Pa. Feb. 25, 1998), to support his equitable restitution theory. In Spear, the plaintiff/union brought suit against a former union officer seeking "equitable relief in the form of restitution of salary paid to [him] during the period when he was allegedly violating his duty to act in the best interests" of the plaintiff/union. Id. at *8. Although the Court allowed such a claim to proceed under Section 301, this Court does not find Spear to be persuasive authority. First, the former union officer in Spear did not appear or respond to the Complaint and, thus, was defaulted. The Court stated that his default acted to waive "any non-jurisdictional attacks on the sufficiency of the claim" under Section 301. Second, without citation to any supporting authority, the Court did not definitively endorse the "equitable restitution" theory but only concluded that it "presents an arguable basis for subject matter jurisdiction." Id.

Section 301(b) does not use the terms "legal" or "equitable" with regard to available relief. These terms are typically used in assessing a party's right to a jury trial. See Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry, 494 U.S. 558, 573 (1990) (back pay remedy in a breach of fair representation duty case is a legal remedy invoking jury trial right). Section 301(b) insulates individual defendants from a "money judgment" which this Court interprets as meaning a judgment requiring one to pay money to another. This is common sense. In the ERISA context, the First Circuit held that the salary received by a disloyal fiduciary was not recoverable under a theory of equitable restitution. Reich v. Rowe, 20 F.3d 25, 33 (1ˢᵗ Cir. 1994). It held that the receipt of salary

-16-

was a part of the Plan's "cost of operations" and could not be characterized as "ill-gotten profits" despite the fiduciary's breaches. Id.  Similarly, Defendants' salary was a cost of Local 134's operations and was not an ill-gotten profit.  Plaintiff alleges that Defendants were "full time salaried employees" of Local 134.  Thus, prior to termination of their employment, Local 134 was obligated under the federal Fair Labor Standards Act, 29 U.S.C. § 201, et seq. to pay to Defendants their full salary for each payroll period worked, regardless of "the quality or quantity of the work performed." 29 C.F.R. § 541.118(a).

Plaintiff's claim for "equitable restitution" of salary paid is one plainly seeking a "money judgment" against Defendants.  Thus, it is barred by Section 301(b).  See Bldg. Material and Dump Truck Drivers, Local 420 v. Traweek, 867 F.2d 500, 513 (9th Cir. 1989) (finding no Section 301 subject matter jurisdiction over a local union's claim seeking return of union funds disbursed by former union officers).

## Conclusion

For the foregoing reasons, I recommend that Defendants' Motion for Judgment (Document No. 16) be GRANTED.  I also recommend that the District Court decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's remaining state law "salary increase"claim arising under Local 134's Constitution and enter final judgment in favor of Defendants.  Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt.  See Fed. R. Civ. P. 72(b); D.R.I. Local R. 32.  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete,

792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir.

1980).

LINCOLN D. ALMOND
United States Magistrate Judge
August 24, 2005

-18-