UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

**Peter Rider, as Trustee of Local 134, Service Employees International Union, AFL-CIO**
**Plaintiff**

**v.** **C. A. No. 04-419 T**

**Karen McAninch and Charles Wood**
**Defendants**

**PLAINTIFF'S OBJECTIONS TO MAGISTRATES REPORT AND RECOMMENDATION**

Plaintiff Peter Rider, as Trustee of Local 134, Service Employees International Union, AFL-CIO ("Local 134"), submits these Objections to the Report and Recommendation of Magistrate Almond dated August 24, 2005 ("Report") which recommended that Defendants Karen McAninch ("McAninch") and Charles Wood ("Wood") be granted judgment on the pleadings dismissing this action.

**OBJECTION NO. ONE**

The Report errs at pages 6 and 7 by adopting and applying an analysis of federal preemption under 29 U.S.C. 185 as set forth in a prior Magistrate's Report in R.I. Fed'n of Teachers and Health Prof'lns, AFT, AFL-CIO v. Callaci, CA No. 99-05ML. Callaci concerned a collective bargaining agreement that governed the standards of employment applicable to allegedly disloyal employees. Local 134, in contrast, asserts federal jurisdiction over this matter based upon the Constitution of the Service Employees International Union, ("SEIU"), which establishes a duty of loyalty by members of the SEIU but does not delineate special obligations owed to local unions by employees of its local union affiliates. No

objections were ever filed to Callaci and it has never been cited as authoritative until this report.

**OBJECTION NO. TWO**

The Report errs at page 9 by concluding that a Union's action against disloyal employees arguably falls under the National Labor Relations Act's, 29 U.S.C. et seq. purview and are therefore preempted. The Supreme Court has recognized several exceptions to NLRA preemption that are applicable to this matter.

**OBJECTION NO. THREE**

The Report errs at page 10 by accepting the Defendants' argument that Local 134 has a right to terminate their employment but is precluded by the NLRA from any further efforts to "penalize" their allegedly disloyal conduct. A union, like any other employer, is not precluded, in appropriate cases, from collecting damages imposed upon it by disloyal employees. There is nothing in the NLRA that differentiates between a union employers' right to discharge disloyal employees as opposed to collecting from them damages flowing directly from the disloyal conduct that even the Defendants admit warrant a discharge.

**OBJECTION NO. FOUR**

The Report at page 11 errs by concluding that the existence of competing representational claims by Local 134 and a rival labor organization established by the Defendants during their employment by Local 134 renders Local 134's Rhode Island common law claims of disloyalty preempted by the NLRA. The Court's analysis would prevent a labor organization employer from suing to recover embezzled funds if the employees guilty of embezzlement had the foresight to simultaneously establish a rival organization for the purpose of generating a representation claim. The preemption doctrine was never intended to

and does not create a license to steal for employees of local unions.

**OBJECTION NO. FIVE**

The Report errs at page 13 by applying Section 301, 28 U.S.C. 185, preemption doctrine under Lingle v. Norge Div of Magic Chef, 486 U.S. 399 (1988) to Local 134's claims of breach of the Rhode Island common law non-competition and conversion of local union funds. Both of these claims involve duties that are measured by the requirements of Rhode Island state employment doctrines and do not rest on the SEIU constitutional provisions invoked by Local 134 in its First Cause of Action. It will not be necessary to construe the SEIU constitution to determine that union employees who are on the payroll of Local 134 have breached their obligations of loyalty to their employer by using Local 134 resources to establish and operate a rival entity that is seeking to deprive Local 134 of its revenues. The Report further errs at page 14 by concluding that "it is impossible in this case to determine which "hat" (union member or union employee) Defendants were wearing at the time they allegedly committed the disloyal acts". It is absolutely clear that while defendants were both members and employees, this action seeks to recover from them damages as a result of their conduct as employees. Their parallel status and obligations as union members does not insulate them from the consequences of misconduct as employees.

**OBJECTION NO. SIX**

The Report errs at page 17 by failing to recognize that the Section 301 claim brought by Local 134 under the constitution of the SEIU may legally seek equitable restitution from the disloyal local union officers of the salary they were paid by Local 134 while they were simultaneously actually working for a rival organization.

**OBJECTION NO. SEVEN**

The Report at page 17 errs by recommending that the Court not exercise supplemental jurisdiction over the Local 134 constitutional claim for Defendants' unlawful salary increases.

Dated: September 7, 2005

ROBERTS, CARROLL, FELDSTEIN & PEIRCE

By: Richard M. Peirce
Ten Weybosset Street, 8th Floor
Providence, Rhode Island 02903
(401) 521-7000

Attorneys for Plaintiff

Of Counsel:

KENNEDY, JENNIK & MURRAY, P.C.

By: Thomas M. Kennedy
113 University Place, 7th Floor
New York, New York 10003
(212) 358-1500

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that I have this 7th day of September, 2005, by first class mail, postage prepaid, served a copy of the foregoing to the following attorneys for the Defendants:

John W. Dineen
Yesser, Glasson & Dineen
One Providence Washington Plaza
Providence, Rhode Island 02903

Alan J. McDonald, Esq.
Jack J. Canzoneri, Esq.
McDonald & Associates
153 Cordaville Road, Ste. 210
Southborough, Massachusetts 01772

Betty Desrochers

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

**Peter Rider, as Trustee of Local 134, Service Employees International Union, AFL-CIO**
**Plaintiff**

**v.** **C. A. No. 04-419 T**

**Karen McAninch and Charles Wood**
**Defendants**

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF OBJECTIONS TO MAGISTRATE'S REPORT**

Plaintiff Peter Rider, as Trustee of Local 134, Service Employees International Union, AFL-CIO ("Local 134"), submits this memorandum of law in support of Objections to the Report of Magistrate Almond dated August 24, 2005 which recommended that Defendants Karen McAninch ("McAninch") and Charles Wood ("Wood") be granted judgment on the pleadings.

Plaintiff brings three causes of action, one under Federal law and two supplemental Rhode Island common law claims. First, pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("Section 301"), Rider alleges that McAninch and Wood violated the Service Employees International Union ("SEIU") Constitution. Complaint ¶¶ 17-21. Second, Rider alleges a Rhode Island common law claim of breach of the duty of loyalty and noncompetition. Complaint ¶¶ 22-25. Third, Rider alleges that McAninch and Wood unlawfully converted union funds belonging to Local 134. Complaint ¶¶ 26-29. Plaintiff seeks the equitable remedy of restitution under the first cause of action, Complaint ¶ 30(B), and compensatory damages under the common law claims. Complaint ¶ 30(A).

1. **STANDARD OF REVIEW OF MAGISTRATE'S DETERMINATIONS**

Under Federal Rules of Civil Procedures § 72, dispositive matters are those motions as to which a magistrate judge can only make a recommendation rather than a ruling. Phinney v. Wentworth Douglas Hospital, 199 F.3d 1, 5 (1st Cir. 1999). "If a party contests a magistrate's proposed findings and recommendations on a dispositive motion, the district judge must 'make a de novo determination.'" Id. (citing Fed.R.Civ.P. 72(b)). Parties seeking review of a magistrate's decision under 28 U.S.C. § 636(b)(1)(B)(a dispositive motion) must file an objection to the magistrate's recommended decision. Koken v. Auburn Manufacturing, Inc., 2004 WL 2358194, *1 (D.Me. 2004). The legal conclusions set forth by the Magistrate are therefore subject to de novo review by this Court.

2. **FACTUAL ALLEGATIONS OF THE COMPLAINT**

Local 134 is a labor union affiliated with the Service Employees International Union, AFL-CIO ("SEIU"). Complaint ¶ 2. The local is the collective bargaining representative for workers at several employers, including Brown University and Providence College. Complaint ¶ 6. Until July 30, 2003, McAninch and Wood were full-time salaried employees of Local 134, respectively holding the titles of Business Agent and Financial Secretary-Treasurer, the two highest-paid positions. Complaint ¶¶ 4-5, 14.

In 2003, while still being paid by Local 134 as its employees, Defendants used those resources to engage in activities on behalf of a rival organization, the United Service and Allied Workers of Rhode Island ("USAW"), and against Local 134. Complaint ¶ 14. Wood arranged for the printing of cards by which Local 134 members could authorize USAW, rather than Local 134, to act as the members' collective bargaining representative. Answer ¶ 14. McAninch distributed the authorization cards to Local 134 members at worksites, and

gave cards to Local 134 stewards for distribution to members. Defendants' Appendix, Ex. 2, at 7 n.5. Defendants encouraged members to leave Defendants' own local union, and assisted Local 134 members in certifying USAW in its place. Complaint ¶¶ 19, 23. At the same time, Defendants granted themselves unauthorized salary increases. Complaint ¶ 27.

**3. ARGUMENT**

I. THE GARMON DOCTRINE IS INAPPLICABLE TO LOCAL 134'S SECTION 301 AND RHODE ISLAND STATE CLAIMS SINCE THE NLRB DOES NOT HAVE JURISDICTION OVER THE CONDUCT OF UNION EMPLOYEES

The Magistrate's Report concludes that a Union's action against disloyal employees arguably falls under the NLRA's purview and are therefore preempted. The Supreme Court has recognized many exceptions to the reach of NLRA preemption that are applicable to this matter. But more importantly, the NLRB simply does not have jurisdiction over disputes between a union as an employer and the union's employees, regarding those employees' performance of their obligation to work on behalf of the members of Local 134, and therefore Plaintiff's claims cannot be preempted as arguably protected or prohibited by the NLRA..

The Supreme Court has held, "When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield." San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 244 (1959). In Garmon, the state courts issued a judgment "on the assumption that the behavior of the petitioning unions constituted an unfair labor practice." Id., at 245. The Court vacated the judgment as preempted by the NLRA's administrative procedures. Id., at 246-47.

This line of cases does not apply to Plaintiff's First Cause of Action. The "Garmon

doctrine is 'not relevant' to actions within the purview of § 301 . . .." William E. Arnold Co. v. Carpenters Dist. Council of Jacksonville, 417 U.S. 12, 16 (1974)(quoting Teamsters Local 174 v. Lucas Flour Co., 369 U.S. 95, 101 n.9 (1962)). "The authority of the Board to deal with an unfair labor practice . . . is not exclusive and does not destroy the jurisdiction of the courts under § 301." Smith v. Evening News Ass'n, 371 U.S. 195, 197 (1962). "[S]uch actions are judicially cognizable, even where the conduct alleged was arguably protected or prohibited by the National Labor Relations Act because the history of the enactment of § 301 reveals that 'Congress deliberately chose to leave the enforcement of collective agreements to the usual processes of the law.'" Amalgamated Ass'n of Street, Electric Rwy. and Motor Coach Employees v. Lockridge, 403 U.S. 274, 298 (1971)(quoting Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 513 (1962)). Plaintiff's Section 301 claim is not subject to Garmon preemption..

The Rhode Island state claims also are not affected. The Supreme Court has "emphasized that a critical inquiry in applying the Garmon rules, where the conduct at issue in the state litigation is said to be arguably prohibited by the Act and hence within the exclusive jurisdiction of the NLRB, is whether the controversy presented to the state court is identical with that which could be presented to the Board." Belknap, Inc. v. Hale, 463 U.S. 491, 510 (1983). In other words, the test is whether the allegedly unlawful acts consisted of "conduct that was part and a parcel of an arguable unfair labor practice." Id. If, on the other hand, the "injury" remedied "has no relevance to the Board's functions," and the "Board can award no damages, impose no penalty, or give any other relief" to the Plaintiffs, then the claim is not preempted. Linn v. Plant Guard Workers, 383 U.S. 53, 63 (1966). To be preempted, "the controversy which [the complainant] might have presented to the Labor

Board" must be "the same as the controversy presented" under state law. Sears, Roebuck and Co. v. San Diego County Dist. Council of Carpenters, 436 U.S. 180, 198 (1978).

The First Circuit has stated, "It is well-settled that the NLRB enjoys primary jurisdiction over disputes involving unfair labor practices or representational issues." Newspaper Guild of Salem v. Ottaway Newspapers, Inc., 79 F.3d 1273, 1283 (1st Cir. 1996)(citation omitted). For that reason, the Court of Appeals recently noted the importance to preemption analysis that the complainants in a state-law proceeding "could have filed complaints with the NLRB." Local Union No. 12004, United Steelworkers v. Massachusetts, 377 F.3d 64, 79 (1st Cir. 2004)(footnote omitted). In a previous case, the Court found preemption where "the allegations, if found to be true, would constitute a violation of the NLRA." Tamburello v. Comm-Tract Corp., 67 F.3d 973, 977 (1st Cir. 1995)(citation omitted). The appropriate review should "focus on the conduct at the root of [the] controversy," and determine whether that "very same conduct provides the factual basis for . . . unfair labor practice charges . . .." Chaulk Services, Inc. v. Massachusetts Comm'n Against Discrimination, 70 F.3d 1361, 1365 (1st Cir. 1995). The Court concluded there that, "at bottom," the allegations were an "example of an unfair labor practice claim of the kind traditionally handled in the first instance by the NLRB." Id., at 1367.

Section 7 of the NLRA concerns rights of employees to organize, to form unions, and to bargain collectively with their employers. 29 U.S.C. § 157. Section 8(a) defines unfair labor practices by employers, while Section 8(b) does the same for labor organizations. 29 U.S.C. § 158(a), (b). The "unfair labor practices provisions of the NLRA regulate the conduct of employers and labor organizations only--not the acts of individuals as individuals." Local 1814, Int'l Longshoreman's Ass'n v. NLRB, 735 F.2d 1384, 1393 (D.C. Cir. 1984)(citation

omitted). No part of the law governs claims by a union against its own employees.

Local 134 could not file an unfair labor practice charge against Defendants with the NLRB for any reason, since the Board does not have jurisdiction over individuals. Furthermore, an allegation that union employees violated their duties as employees does not state an unfair labor practice, or any arguable claim under the NLRA. The NLRB does not have primary jurisdiction here; indeed, it has no jurisdiction.

This matter concerns employees of a union. McAninch and Wood certainly have the right, as citizens, to circulate authorization cards for rival unions. As employees of Local 134, owing it a duty of loyalty, however, they are liable for the damages Local 134 suffers as a result of their conduct. The difference is illustrated by the obvious point that McAninch and Wood could have avoided any liability to Local 134 by simply resigning from employment prior to the point they took active steps to assist the rival union. They could have remained members of Local 134 without incurring liability but not employees. The difference is further illustrated by the conceptual difficulties inherent in the Magistrate's analysis. According to the Magistrate, a Local Union employee could embezzle all of a local union's treasury and defeat a suit under state common law of conversion (in either State or Federal Court) by simply simultaneously creating a rival labor organization that creates a representation issue somewhere. The Magistrate's report unintentionally creates a literal license to steal for local union employees.

Federal Garmon doctrine recognizes several exceptions that harmonize federal labor doctrines with the need to respect local common law obligations. The Supreme Court's cases have referred to two circumstances in which state law is not preempted, even if the conduct at issue is arguably protected or prohibited by the NLRA. Those exceptions apply if the alleged

conduct is of only "peripheral concern" to the NLRA, or "touches on interests . . . deeply rooted in local feeling and responsibility." Jones, 460 U.S. at 676, 103 S.Ct. at 1459 (citing Garmon, 359 U.S. at 243-44, 79 S.Ct. at 778-79). The Supreme Court has ordinarily applied this exception in cases where the conduct alleged concerned activity traditionally recognized to be the subject of local regulation, most often involving threats to public order such as violence, threats of violence, intimidation and destruction of property. See Lodge 76, Int'l Ass'n of Machinists v. Wisconsin Employment Relations Comm'n, 427 U.S. 132, 136, 96 S.Ct. 2548, 2551, 49 L.Ed.2d 396 (1976); Garmon, 359 U.S. at 247-48, 79 S.Ct. at 780-82; see, e.g., International Union, United Auto., Aircraft and Agr. Implement Workers of America (UAW-CIO) v. Russell, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958)(upholding state court jurisdiction to entertain action by employee for harm resulting from strikers' threats of violence and exclusion by force). The Court has extended this exception to cover acts of trespass, see Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters, 436 U.S. 180, 190-98, 98 S.Ct. 1745, 1754-58, 56 L.Ed.2d 209 (1978), and certain personal torts, such as intentional infliction of emotional distress, see Farmer v. United Bhd. of Carpenters, Local 25, 430 U.S. 290, 304-05, 97 S.Ct. 1056, 1065-66, 51 L.Ed.2d 338 (1977), and malicious libel, see Linn v. United Plant Guard Workers of America, Local 114, 383 U.S. 53, 57-63, 86 S.Ct. 657, 660-63, 15 L.Ed.2d 582 (1966). Employee disloyalty and theft is a traditional matter for local regulation and not of federal concern. As long as the Plaintiff union is not seeking to restrain the conduct of permitted lawful labor union activity, we submit the proper balance is to allow the disloyal employees the freedom to act as they choose but to allow the local union employer the freedom to exercise its rights as an employer under the laws of Rhode Island.

## II. THE MAGISTRATE'S REPORT RELIES UPON AN OPINION WHICH IS BOTH FACTUALLY DISTINGUISHABLE AND WRONGLY DECIDED

The holding of Rhode Island Fed'n of Teachers and Health Professionals v. Callaci, C.A. No. 99-005 ML (D.R.I. Oct. 8, 1999) is both factually distinguishable and plainly incorrect. Callaci concluded that the "status of individuals involved" is not "key to whether a claim is preempted," and cited cases the Court described as applying preemption to claims against "third parties." Id., at 17 (citations omitted). The cited cases, however, carve out a narrow exception that actually proves the rule: to be preempted, claims must be "in essence artfully pleaded unfair labor practice charges" that require "determinations as to whether an employer's conduct constitutes an unfair labor practice under NLRA § 8 and whether an employee's actions are protected under NLRA § 7." Richardson v. Kruchko & Fries, 966 F.2d 153, 158 (4th Cir. 1992)(discharged employee alleging anti-union retaliation sued employer's law firm, requiring "court to pass on the legality under the NLRA of precisely the same conduct that is presently before the NLRB"); Brown v. Keystone Consolidated Industries, Inc., 680 F. Supp. 1212, 1223 (N.D. Ill. 1988)(claim against employer's alter ego alleges "same conduct which would form the core of an unfair labor practice presented to the NLRB"); Lumber Production Industrial Workers Local No. 1054 v. West Coast Industrial Relations Ass'n, Inc., 775 F.2d 1042, 1048 (9th Cir. 1985)("union is reasserting the same set of facts that it relied on in its unsuccessful unfair labor practice claim, but this time the suit is directed at the labor consultants").

These cases involve the functional equivalent of unfair labor practices against stand-ins for the employer: alter ego corporations, lawyers, labor consultants. McAninch and Wood are not stand-ins for an employer or a union. They are being sued as individuals, for breaching common law duties owed between an employee and employer that are not regulated

by the NLRA. The union's allegations against Defendants could not be brought as an unfair labor practice charge, and are not preempted.

Callaci was an employee of the Plaintiff union that was employed pursuant to a collective bargaining agreement. Callaci concluded that any claims of disloyalty had to involve an interpretation of that collective bargaining agreement and were therefore preempted. The Magistrate has equated the SEIU constitution with the Callaci collective bargaining agreement. But these agreements are fundamentally different even though each provides a basis for federal jurisdiction under Section 301, 29 U.S.C. 185. The Callaci collective bargaining agreement was for the express purpose of establishing the terms and conditions of Callaci's employment. The Rhode Island state law claims could not be adjudicated without reference to the collective bargaining agreement.

The SEIU constitution, however, is not directed at the obligations of union employees. It states in the Article entitled "Members Interests, Transfers" at Section 1 that:

> No member of this International Union shall injure the interests of another member by undermining such member in connection with wages or financial status or by any other act, direct or indirect, which would wrongfully jeopardize a member's office or standing. Affidavit of Stuart Lichten ("Lichten Aff."), Ex. A, Art. XVI, § 1.

The fact that Defendants breached their obligations as members of the SEIU is not a defense to their simultaneous but independent breach of their employment obligations under Rhode Island common law. Callaci is therefore distinguishable from this matter.

That Callaci is wrongly decided is discussed above in Point I.

## III. <u>THE MAGISTRATE'S REPORT ERRONEOUSLY APPLIES *LINGLE* PREEMPTION TO LOCAL 134'S RHODE ISLAND LAW CLAIMS</u>

The Report applies Section 301 preemption doctrine under <u>Lingle v. Norge Div. of Magic Chef</u>, 486 US 399 (1988) to Local 134's claims of breach of the Rhode Island common

law non-competition and conversion of local union funds. The Supreme Court has held that "an application of state law is preempted by § 301 . . . only if such application requires the interpretation of a [Section 301] agreement." Lingle, 486 U.S. 399, 413 (1988)(footnote omitted). The two Rhode Island law claims, alleging breach of the duty of loyalty and conversion, have nothing to do with the SEIU Constitution, which prohibits injuring or undermining the interests of other SEIU members. Both of these claims involve duties that are measured by the requirements of Rhode Island state employment doctrines and do not rest on the SEIU constitutional provisions invoked by Local 134 in its First Cause of Action. It will not be necessary to construe the SEIU constitution to determine that union employees who are on the payroll of Local 134 have breached their obligations of loyalty to their employer by using Local 134 resources to establish and operate a rival entity that is seeking to deprive Local 134 of its revenues. The Report further errs by concluding that "it is impossible in this case to determine which "hat" (union member or union employee) Defendants were wearing at the time they allegedly committed the disloyal acts." It is absolutely clear that while Defendants were both members and employees, this action seeks to recover from them damages as a result of their conduct as employees. Their parallel status and obligations as union members does not insulate them from the consequences of misconduct as employees.

## IV. THE REPORT ERRONEOUSLY CONCLUDES THAT LOCAL 134 CANNOT ASSERT A SECTION 301 CLAIM TO RECOVER EQUITABLE RESTITUTION OF SALARIES PAID TO DEFENDANTS WHILE THEY WERE IN FACT WORKING FOR A RIVAL ORGANIZATION

The Report errs by failing to recognize that the Section 301 claim brought by Local 134 under the constitution of the SEIU may legally seek equitable restitution from the disloyal local union officers of the salary they were paid by Local 134 while they were simultaneously

actually working for a rival organization. Section 301 provides, "Any money judgment against a labor organization . . . shall be enforceable only against the organization . . ., and shall not be enforceable against any individual member or his assets." 29 U.S.C. § 185(b). The Supreme Court has held that this portion of the statute bars damage actions against individual employees for violation of a collective bargaining agreement. Complete Auto Transit, Inc. v. Reis, 451 U.S. 401, 417 (1981). "There is, however, substantial authority in the lower courts to the effect that individual defendants may be subject to liability for violations of union constitutions." Shea v. McCarthy, 953 F.2d 29, 32 (2d Cir. 1992)(citations omitted). Defendants concede that individuals may be liable under Section 301, at least for equitable relief. Def. Mem., at 26-27.

Section 301 claims by unions against individual members have been upheld by courts in circumstances similar to the instant case, even where the relief sought involved the payment of money. In International Longshoremen's Ass'n v. Spear, Wilderman, Borish, Endy, Spear & Runckel, 1998 WESTLAW 83684 (E.D. Pa. Feb. 25, 1998), a union sued a former officer of a local for, inter alia, breach of fiduciary duties. Id., at *1. A Section 301 claim was brought for breach of the union's constitution, "specifically its statement of purpose. That claim, which seeks equitable relief in the form of restitution of salary paid to [Defendant] during the period when he was allegedly violating his duty to act in the best interests of Local 1332, presents an arguable basis for subject matter jurisdiction." Id., at *8. See also, International Union of Electronic, Electrical, Salaried, Machine & Furniture Workers v. Statham, 97 F.3d 1416, 1421-22 (11th Cir. 1996)(union alleging breach of fiduciary duties and of union constitution by local officers may seek $62,000 in proceeds from land sale under Section 301); National Ass'n of Basketball Referees v. Middleton, 688 F.

Supp. 131, 134-35 (S.D.N.Y. 1988)(union may sue members for $30,000 in special assessments under Section 301); Mayes v. Local 106, Int'l Union of Operating Engineers, 739 F. Supp. 744, 746-48 (N.D.N.Y. 1990)(union may sue member under Section 301 for expenses incurred in defense of bad-faith charges; claim for breach of union's constitution's provision for "penalties for activities which create dissension among the membership or interfere with the Union's activities"); International B'hood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers v. Local Lodge D111 of the Cement, Lime, Gypsum and Allied Workers, 681 F. Supp. 1570, 1572 (S.D. Ga. 1987), aff'd, 858 F.2d 1559 (11th Cir. 1988)(Section 301 claim against local officers for return of "any and all funds"); Operative Plasterers & Cement Masons Int'l Ass'n v. Benjamin, 776 F. Supp. 1360, 1366-68 (N.D. Ind. 1991)(Section 301 claim against former local officer for return of union property and supplemental state law claims for monetary damages).

In view of this case law, Local 134 only seeks restitution for union funds spent on Defendants' activities on behalf of a competitor union as relief on the First Cause of Action. Such relief would include recoupment of Defendants' unauthorized salary and any other expenditures, such as printing costs, incurred in connection with Defendants' campaign. Complaint ¶ 30(B); Answer ¶ 14. Monetary damages are sought as part of Plaintiff's supplemental state law claims.

## V. THIS COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER THE ADMITTED NON PREEMPTED STATE LAW CLAIMS UNDER THE LOCAL 134 CONSTITUTION

The Report recommends that the Court not exercise supplemental jurisdiction over the Plaintiff's claims under the Local 134 constitution for recovery of the unlawful salary increases that Defendants awarded themselves. Under 28 U.S.C. 1367, this court has

supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Since as noted above, the Magistrate's recommendation of dismissal for the Section 301 claim over which this court has original jurisdiction should not be followed, the remaining state law based claims should also be maintained since they are related to the federal claims in that they involve the same parties and took place in and around the same period of time.

## 4. CONCLUSION

The Magistrate's Report and Recommendation should be rejected by this court.

Dated: September 7 , 2005

ROBERTS, CARROLL, FELDSTEIN & PEIRCE

By: Richard M. Peirce
Ten Weybosset Street, 8th Floor
Providence, Rhode Island 02903
(401) 521-7000
(401) 521-1328

Attorneys for Plaintiff
Of Counsel:

KENNEDY, JENNIK & MURRAY, P.C.

By: Thomas M. Kennedy
113 University Place, 7th Floor
New York, New York 10003
(212) 358-1500

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that I have this 7th day of September, 2005, by first class mail, postage prepaid, served a copy of the foregoing to the following attorneys for the Defendants:

John W. Dineen
Yesser, Glasson & Dineen
One Providence Washington Plaza
Providence, Rhode Island 02903

Alan J. McDonald, Esq.
Jack J. Canzoneri, Esq.
McDonald & Associates
153 Cordaville Road, Ste. 210
Southborough, Massachusetts 01772

Betty Desrochers