Fax of Local Associate Counsel:
Attorney John W. Dineen
401-331-9267
& Assoc. Counse Pro Hac Vice
Attorney Jack J. Canzoneri
508-485-4477

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

PETER RIDER, as Trustee of Local 134,
Service Employees International Union, AFL-CIO

Plaintiff,

v.

Karen McAninch and Charles Wood

Defendants

CIVIL ACTION
NO. 04-419-T

**DEFENDANTS' OPPOSITION TO OBJECTIONS OF PLAINTIFF TO REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE**

Defendants Karen McAninch and Charles Wood submit this memorandum in opposition to Objections of Plaintiff to Magistrate Judge's Report and Recommendation (R & R) in the above-captioned matter. Defendants incorporate all arguments previously submitted to the court. Defendants below supplement their argument in three respects in opposing Plaintiff's objections.

**POINT No. 1: Plaintiff's Claim That The NLRA Does Not Protect Employees Of Unions Is Without <u>Colorable Basis Under The Law.</u>**

In its challenge to the R & R Plaintiff frivolously claims that, "the NLRB simply does not have jurisdiction over disputes between a union as an employer and the union's employees, regarding those employee's performance of their obligation to work on behalf of [the union]." (Pl. Obj. Memo. at page 3.) Then, based upon that fallacy, Plaintiff argues that "[t]herefore Plaintiff's claims cannot be preempted as arguably protected or prohibited by the NLRA." Plaintiff's frivolous contention in this regard is contradicted by plain statutory language, and precedent of the Supreme

Court and the NLRB, which establish that an "employer" under the NLRA includes a labor union when acting as employer. 29 U.S.C. §152(2); Office Employees Inter'l Union, Local 11 v. NLRB ("Oregon Teamsters"), 353 U.S. 313 (1957); Quesnell, 328 NLRB 1079, 1081 (1999); Thorenson, 341 NLRB No. 114 (2004 NLRB LEXIS 215) (2004); SEIU v. Jaos, 344 NLRB No. 135, 2005 NLRB LEXIS 326, at *11 (July 13, 2005). Plaintiff's claim to the contrary fails to reconcile this and therefore is without colorable baseless.

**POINT No. 2: Plaintiff Frivolously Claims That Defendants' Conduct Does Not Relate To Matters Governed By The NLRA.**

Given that a labor union's conduct in dealing with its employees is subject to the NLRA, the next question is whether the standards governing an employer's adverse action taken against employees for disloyal conduct is implicated here. Clear precedent shows that Defendants' conduct, as attacked in this lawsuit, is "mutual aid" and "protected activity" under Section 7 of the NLRA.[1] Initially it should be noted that embezzlement of union funds is not protected activity and we focus on that issue separately below in Point No. 3. However, all other aspects of conduct of Defendants attacked by Plaintiff in this lawsuit—advocating the right of members to join a new union, encouraging workers to exercise their statutory rights under the NLRA to file representation petitions, distributing representation cards, and printing such cards—are well within the realm of activity protected by Section 7 of the NLRA and this is admitted by Plaintiff. (Compl. at ¶14.)

The issue of an employer's right to take adverse action against its employees whose conduct as here is both protected mutual aid under Section 7 of the Act and disparaging and disloyal to the

[1] Although unions for decades have argued for protection of employees when they engage in "mutual aid" (employees of one employer taking action in support of labor rights of employees of another employer), the Plaintiff on behalf of the largest labor union in the United States (Service Employees International Union) shamelessly and opportunistically seeks to reduce the scope of the historical protection of "mutual aid" in its quest to retaliate against two of its former employees, and regardless of the implication that its argument (if sustained) would have on its 1.8 million members and millions of other employees covered by the NLRA.

employer is the subject of longstanding precedent. Callaci, contrary to the implication of Plaintiff, is hardly a stand-alone case in resolving that issue. Rather, that precise issue was addressed more than fifty years ago in the lead Supreme Court of 1953 referred to as "Jefferson Standard", NLRB v. Local Union No. 1229, IBEW, 346 U.S. 464 (1953). In Jefferson Standard a group of employees "distributed 5,000 handbills making a sharp, public, disparaging attack upon the quality of their employer's product. Id. at 471. Those "vitriolic" handbills were distributed on a "public square" and in "barber shops, restaurants and buses." Id. at 467-68. The Supreme Court sustained the Board's determination that the employees forfeited protection under the Act and that the employer was within its rights to terminate them. Id. at 471. In so finding the Supreme Court balanced the Section 7 rights of the employees with the employer's right to employ a workforce that does not seek to destroy its business; the balance in the circumstances there tilted in favor of allowing the employer to fire the employees. Id. at 477-78.

Following Jefferson Standard there have been numerous instances where the NLRB has applied that principle.[2] Recently, it has applied that principle specifically in context of a union (as employer) and its employees. In Thorenson, 341 NLRB No. 114 (2004 NLRB LEXIS 215) (2004) the NLRB found that the union (as employer) did not violate Section 8(a)(1) by terminating its disloyal employee for engaging in protected activity under Section 7 because the union's interests in ridding itself of such employee outweighed the employee's Section 7 rights. In essence the NLRB in Thorenson found that the totality of circumstances were like those presented in Jefferson Standard. **However**, the NLRB held that the union-employer's threat of economic reprisal, after it

---

[2] See, e.g., NLRB v. Mount Desert Island Hosp., 695 F.2d 634, 636-41 & n.1 (1st Cir. 1982) (finding that the NLRA protected an employee letter to a newspaper claiming that "very minimal patient care is given and safety standards are stretched to the limit and beyond" because of "poor staffing"); Community Hosp. of Roanoke Valley, Inc. v. NLRB, 538 F.2d 607, 609-610 (4th Cir. 1976) (finding that NLRA protected an employee who claimed in a television interview that there are times "when there are not [registered nurses] to cover the whole medical-surgical unit of 40 patients"); KBO Inc. 315 NLRB 570 (1994) (employee comments to press).

terminated the employee, if the employee filed an unfair labor practice, violated Section 8(a)(1) because the threat was an overreaching penalty, not narrowly tailored and therefore failing to outweigh the employee's Section 7 interests. Thorenson, NLRB LEXIS 215 at pages **45-48 (NLRB adopting ALJ decision).

Likewise, the Plaintiff's labor organization, S.E.I.U., as well has been involved in prior NLRB cases similar to the instant case. For example, in SEIU v. Jaos, 2004 NLRB LEXIS 738 (2004) an administrative law judge (ALJ) found that termination was not an overly harsh penalty. On July 13, 2005[3] the NLRB on appeal reversed the ALJ's ruling in SEIU v. Jaos on the termination issue and found that, the termination as well, was an overly harsh penalty, distinguishing the case from the circumstances presented in Thorenson. SEIU v. Jaos, 344 NLRB No. 135, 2005 NLRB LEXIS 326, at *11 (July 13, 2005). The NLRB commented as follows about the balancing test used in reaching that conclusion:

> [T]wo distinct questions are presented when a union-employer discharges a key paid employee, **such as an organizer or business representative, for criticizing the union's policies**. The first question is whether the employee engaged in concerted activity that is protected from employer interference by Sections 7 and 8(a)(1) of the Act. If so, the second question is whether the union has a legitimate countervailing interest that outweighs the employee's exercise of his Section 7 rights.

2005 NLRB LEXIS 326 at *8 (emphasis added).

We need not argue here about whether termination of Defendants from their business representative positions in July 2003 for disloyal conduct falls under the rationale of SEIU v. Jaos (prohibiting termination) or Thorenson (permitting termination). It is enough that the foregoing precedent reinforces the conclusion that the NLRB carefully measures the degree of adverse action

[3] Defendants in their Reply Brief to the Magistrate Judge and the Magistrate Judge in his R & R cited the ALJ ruling. The NLRB appeal ruling cited in the text was not issued at time Defendants filed their brief. (Def. Reply Br. at page 4; R & R at 10.)

taken against disloyal union employees who engage in NLRA Section 7 protected activity, and sometimes finds that even termination is overly harsh response as it did when Plaintiff's union S.E.I.U. fired its disloyal business agent in SEIU v. Jaos. Plaintiff has failed to reconcile these cases and analysis and this highlights the frivolousness of its arguments to the court. Nor has it reconciled how the presence of Section 7 activity as the very conduct that is "disloyal" distinguishes this case from other pure non-Section 7 disloyalty cases under Rhode Island common law. These are among the elements that define the baseless nature of Plaintiff's arguments. The foregoing precedent shows that the post-termination retaliation by Plaintiff against Defendants in the form of this lawsuit seeking $135,000 plus in damages is arguably unlawful retaliation violative of Section 8(a)(1) and therefore preempted by the NLRA.[4] See also Bill Johnson's Rest. v. NLRB, 461 U.S. 731 (1983) (lawsuit retaliating for Section 7 conduct may constitute unfair labor practice); Rite Aid Corp., 305 NLRB 832, 835 (1991) (illegal remedy under Section 8(b)(1)(A)). The finding in the R & R that Garmon preemption is applicable to the all three counts is correct and should be sustained.

The second reason that this lawsuit implicates rights under the NLRA is that the conduct of Defendants is arguably an unfair labor practice. Rather than address that issue head on, Plaintiff sarcastically argue that Plaintiff cannot file a ULP directly against McAninch and Wood for their conduct, and that therefore their conduct cannot implicate rights under the NLRA. (Pl. Memo at page 6, "No part of the law governs claims by a union against its own employees.) Plaintiff frivolously misdirects the analysis by this claim. As Plaintiff well knows, McAninch's and Wood's conduct as agents and representatives of rival union USAW (as alleged in the complaint) could have provided the basis for a ULP against USAW, and Plaintiff has failed to cite any precedent showing

[4] The frivolousness of Plaintiff's position is also demonstrated by its own Objections Memorandum of Law. The Court should note that Plaintiff conspicuously failed to address the Magistrate Judge's reliance on Thorenson, SEIU v. Jaos, and Pennsylvania Nurses Association v. Pennsylvania State Education Association, 90 F.3d 797 (3rd. Cir. 1996) discussed below, in finding that Defendants' conduct was "arguably" protected or prohibited activity.

otherwise. Plaintiff should not be permitted to do an end run around the reality that it could have filed a ULP against USAW and pretend that the conduct of Defendants did not arguably violate Section 8(b)(1). That is so, especially where as here, SEIU seeks damages in lost dues income due to losing the elections, yet had SEIU filed a ULP alleging a violation of NLRA Section 8(b) (1) against USAW it would have blocked the election pending the NLRB's resolution of any such ULP.[5] The ruling of the Third Circuit in Penn. Nurses Assoc. v. Penn. State Educ. Ass'n, 90 F.3d 797, 802-03 (3rd. Cir. 1996) reached the same conclusion, yet was not distinguished in any way by Plaintiff; see also Callaci.

Accordingly, the conduct attacked in this lawsuit is "part and a parcel of an arguable unfair labor practice" and therefore such claims are preempted under the standard cited by Plaintiff at page 4 of his memorandum of law (citing Belknap, 463 U.S. at 510). As in Pennsylvania Nurses Association,

> much of the conduct forming the basis of the state tort claims also underlies the potential unfair labor practice charges, and the same facts would need to be determined in each proceeding. This creates a risk of conflicting rulings from the state court and the Board, and threatens state interference with the NLRB's enforcement of national labor relations policy.

Id. For these reasons, the Magistrate correctly concluded that this lawsuit implicates conduct governed by the NLRA under Section 8(b)(1), and Plaintiff's semantics about the conduct as concerning a disloyal employee (instead of agent of another union) fail to cure that defect.[6]

---

[5] The NLRB has a "Blocking Charge" rule. It is set forth at the preamble to Sec. 11730 of the Board's Casehandling Manual (Part Two - Representation Proceedings) which reads: "The Agency has a general policy of holding in abeyance the processing of a petition where a concurrent unfair labor practice charge is filed by a party to the petition and the charge alleges conduct that, if proven, would interfere with employee free choice in an election, were one to be conducted." See also Bally's Atlantic City, 338 N.L.R.B. 443 (2002) (ULP blocks election).

[6] The preemptive effect of Section 301 creates a "significant exception to the well-pleaded complaint rule", and even "artfully pleaded" state law claims are to be treated as federal claims. BIW Deceived v. Local S6, 132 F.3d 824, 831 (1st Cir. 1997). This principle applies as well to NLRA preemption as discussed in

Finally, Plaintiff's complaint implicates rights of Defendants under Section 9 of the NLRA because the damages claim at bottom attacks the fairness of NLRB-supervised elections. Yet such Section 9 representational matters may not be even reviewed in court. (See also Def. main brief at 10-11, 19-22).

**POINT No. 3: Plaintiff's Assertion That The Magistrate's Ruling Gives "A Literal License To Steal For Local Union Employees" Is Outrageous Hyperbole And Should Be Rejected.**

Plaintiff's objections memorandum states the following outrageous conclusion:

> According to the Magistrate, a Local Union employee could embezzle all of a local union's treasury and defeat a suit under state common law of conversation (in either State or Federal Court) by simply simultaneously creating a rival labor organization that creates a representation issue somewhere. The Magistrate's report unintentionally creates a literal license to steal for local union employees.

(Pl. Obj. Memo at page 6.) The Plaintiff's argument in this regard is palpably frivolous.

As found by the Magistrate in the R & R, not only is Plaintiff's Complaint lacking as a model of clarity, but Plaintiff has shifted its legal theories as it tries to morph its lawsuit to avoid dismissal. (R & R at 11-12.) That evolution now entails Plaintiff focusing on the assertion that Defendants have literally embezzled funds from the local union's treasury. Plaintiff is forced to change its focus from damages from lost dues income as a result of Defendants' Section 7 conduct (as was prominently alleged in his complaint). It must do so because the Magistrate's analysis is unassailable where he finds that imposing damages for such conduct would have the effect of regulating such conduct, contrary to the holding of Garmon, and therefore is preempted. Garmon, 359 U.S. at 247 ("[State] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent

---

Defendants' principle memorandum of law filed in support of their motion for judgment on the pleadings and in Pennsylvania Nurses Association.

method of governing conduct and controlling policy."). In response Plaintiff dances in another direction and builds the straw man of embezzlement and the "literal license to steal."

There are several reasons that the Court should find that this shift is unavailing. As a starting point, the Court should review the complaint to discern whether there is any such allegation of theft or improper receipt of funds. Obviously, Plaintiff alleges that Defendants improperly received 3% increases in their salary, and the Court declined supplemental jurisdiction on that $5000 in damages allegation, Count III ¶27. (Compl. at ¶¶12-14.) Thus, Plaintiff's hyperbole about the R & R providing a "literal license to steal" clearly does not relate to that claim. However, the balance of the complaint contains only conclusory allegations about any other conversion or embezzlement. Those conclusory allegations are insufficient basis to avoid dismissal. In that regard, it appears that the thrust of the Plaintiff's claim of embezzlement is drawn from ¶19 and ¶28 of the Complaint. There Plaintiff alleges that Defendants "utilized paid salary time and resources of Local 134 in activities" directed in support of a rival union and against Local 134 by "distribut[ing] designation cards for a different labor organization on various dates and locations including on June 9, 2003". (Compl. at ¶19; see also at ¶20.) At Paragraph 28 Plaintiff similarly alleges that Defendants "unlawfully converted the funds of Local 134 by utilizing its funds for purposes other than legitimate union purposes."[7] Nothing more is said about the details of such allegations in any other materials submitted to the court; no monetary amount of the supposed embezzlement is alleged in the complaint; and no such specifics are included in the present objection memorandum

---

[7] It does not appear ¶23 of the complaint contains an allegation of embezzlement. There Plaintiff alleges that Defendants "misappropriated Local 134's trade secrets involving the locations and composition of its membership to effectuate such interference, and converted other confidential business information belonging to Local 134." It appears that Plaintiff means that Defendants used their knowledge of the locations and composition of Local 134 bargaining units in order to identify such units as targets for the exercise by Defendants of protected activity and mutual aid under Section 7 of the NLRA. Unlike an employee who targets her employer's clients for solicitation by a rival business outside the context of Section 7 of the NLRA, the conduct here is protected by federal law, a point that Plaintiff asks the court to ignore. "[State] regulation can be as effectively exerted through an award of damages as through some form of preventive relief." Garmon, 359 U.S. at 247.

of Plaintiff other than the generic claim about the Magistrate providing a "literal license to steal". Indeed, we do not know whether SEIU is concerned about a $40 copying cost for representation cards (a Rhode Island small claims issue) or thousands of dollars in money embezzled and given to USAW. We simply have the generalized assertion that Plaintiff's used Local 134 resources for the benefit of USAW.

There are several legal deficiencies with Plaintiff's generalized allegations about Plaintiff's allegedly using Local 134 "resources" in that regard. First, if Plaintiff wishes to be taken seriously that Defendants embezzled funds, he must allege such fraudulent activity by means of a verified complaint with specificity. This is so under Rhode Island Rule of Civil Procedure Rule 9(b), and F.R.C.P. Rule 9(b), both of which require "specification of the time, place, and content of an alleged false representation" and, here, presumably that would also entail allegation of the specific amount that Defendants diverted from the union treasury to aid the rival union (setting aside the issue of their salary, addressed below). New England Data Services, Inc. v. Becher, 829 F.2d 286 (1st Cir. 1987). This requirement obtains "even when the fraud relates to matters peculiarly within the knowledge of the opposing party." Id. Here the monetary amounts specified in the complaint relate to lost dues income and the alleged improper 3% salary increase. Plaintiff has never provided even a scintilla of detail about the alleged value or mysterious identity of the embezzled "resources".

Although indirectly applicable (because it relates to suits by union members against union officials), specificity is also required by Section 501(c) of the Labor Management Reporting and Disclosure Act (LMRDA) which prohibits "any person [from] embezzle[ing], steal[ing], or unlawfully and willfully abstract[ing] or convert[ing] to his own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization." 29 U.S.C. 501(c). In that regard, as well, the Court should note that Section 501(b) of the LMRDA specifically requires that any complaint of embezzlement of union funds be alleged with particularity in a

"verified" complaint. 29 U.S.C. §501(b). See also State v. Crescenzo, 332 A.2d 421 (R.I. 1975) (discussing specificity requirement for criminal indictment for embezzlement).

Taking into account the requirements of Rhode Island and FRCP Rule 9(b) and the similar policy underlying Section 501(b) and (c) of the LMRDA, 29 U.S.C. §501, the Court should find that the Magistrate has not given any "literal license" for any union officer or employee to steal. The Plaintiff makes that claim only by the expedient of ignoring the lack of any specificity in its allegations about such alleged embezzlement, and by ignoring the Magistrate's rationale in his R & R, in which he found correctly as follows:

> No matter how Plaintiff describes it (disloyalty, unfair competition, misappropriation of resources, etc.), the bottom line is that the Plaintiff is alleging that Defendants engaged in 'disloyal conduct' by assisting a competing labor organization.

(R & R at 14.) In short, the Magistrate properly found that Plaintiff's complaint is rooted in challenging Section 7 conduct of Defendants and there are no specifications of theft or embezzlement.[8] Thus, contrary to the hyperbole of Plaintiff, the Magistrate did not find that union officials may embezzle funds so long as they do so in connection with exercising Section 7 rights.

With respect to Plaintiff's claim about Defendant's receiving a salary from Local 134 while engaging in disloyal conduct, that as well fails to help Defendants. For the reasons explained by the Magistrate, this hardly translates into an embezzlement allegation. Rather it focuses on the right of Defendants to engage in protected activity under NLRA Section 7 during a workweek in which they were paid a salary, in spite of the requirements of the Fair Labor Standards Act. (R & R at 17.) Thus, Plaintiff's claim that the R & R provides a "literal license to steal" should be identified by the Court for what it is: disrespectful, outrageous hyperbole without an ounce of colorable legal basis.

---

[8] Included in this is the document styled "Statement of Case" handed to the judge at the pre-trial conference in chambers on February 8, 2005. That document reflects no emphasis on embezzlement. At most, at page 3 of that document, ¶6, Plaintiff states that Defendants "utilized union funds for the above-referenced illegitimate purposes."

Respectfully submitted,

On behalf of Defendants,

Karen McAninch and Charles Wood,

By their attorneys,

ASSOCIATE LOCAL COUNSEL:

John W. Dineen, RI Bar #2346
Yessor Glasson & Dineen
Counselors at Law
One Providence Washington Plaza
Providence, RI 02903
Tele. #: 401-331-3550
Fax #: 401-331-9267

Dated: September 23, 2005

Respectfully submitted,

On behalf of Defendants,

Karen McAninch and Charles Wood,

By their attorneys,

ASSOCIATE COUNSEL,
ADMISSION PRO HAC VICE:

Alan J. McDonald, Esq.
Jack J. Canzoneri, Esq.
McDonald & Associates
153 Cordaville Road, Ste. 210
Southborough, MA 01772
Tele. #: 508-485-6600
Fax #: 508-485-4477

Dated: September 23, 2005

**Certificate of Service**

I, John W. Dineen, hereby certify that I have this day, by first-class mail, postage prepaid, served a copy of the foregoing Defendants' Opposition To Objections Of Plaintiff To Report And Recommendation of Magistrate Judge upon Counsel for Plaintiff: (1) Associate Local Counsel, Richard M. Peirce (#0564), Roberts, Carroll, Feldstein & Pierce, Ten Weybosset Street – 8th Floor, Providence, RI 02903 [Tele. #401-521-7000; Fax #: 401-521-1328]; (2) Associate Counsel, Admission Pro Hac Vice, Thomas M. Kennedy, Esq. and Stuart Lichten, Kennedy, Schwartz & Cure, P.C., 113 University Place, New York, NY 10003 [Tele.# 212-358-1500].

Dated: September 23, 2005

John W. Dineen, RI Bar #2346