UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

PETER RIDER, as Trustee of
Local 134, Service Employees
International Union, AFL-CIO

v. C.A. No. 04-419-T

KAREN MacANINCH and
CHARLES WOOD

**MEMORANDUM AND ORDER**

ERNEST C. TORRES, Chief Judge.

Peter Rider, as trustee of Local 134 of the Service Employees International Union ("SEIU") brought this action against Karen MacAninch and Charles Wood, former officials of Local 134, for breach of fiduciary duty and conversion, based on allegations that the defendants worked to convince members of Local 134 to join a rival labor union and that they awarded themselves unauthorized salary increases.

A Magistrate Judge has issued a Report and Recommendation ("R&R") recommending that the defendants' Motion for Judgment on the Pleadings be granted with respect to the breach of fiduciary duty claims and that this Court decline to exercise supplemental jurisdiction over the state law claim for conversion. Rider has objected to that recommendation.

For reasons hereinafter stated, the Magistrate Judge's recommendation is accepted. The purpose of this Memorandum and Order is to address Rider's objections and to make clear this Court's reasons for accepting the recommendation, which differ slightly from the reasons expressed by the Magistrate Judge.

## Background

The Complaint alleges that, until July 30, 2003, MacAninch and Wood were salaried employees of Local 134 and members of both Local 134 and the SEIU. More specifically, it alleges that MacAninch was Local 134's business agent and that Wood was its secretary/treasurer. The Complaint further alleges that Local 134 was the collective bargaining representative for employees at Brown University and Providence College and that, in 2003, the defendants helped to persuade Local 134 members at those institutions to join the United Service and Allied Workers of Rhode Island ("USAW"), a competing union, thereby violating Article XVI of SEIU's constitution.[1] Finally, the Complaint also alleges that, during 2002 and 2003, the defendants granted themselves salary increases that were not approved by the union membership as required by

---

[1]Paragraph 16 of the Complaint quotes Article XVI as providing that "[n]o member of the SEIU shall injure the interests of another member by undermining such member in connection with wages or financial status or by any other act, direct or indirect, which would wrongfully jeopardize a member's office or standing."

Article V of Local 134's constitution, which provides that, "[t]he Executive Board shall fix the compensation of any officer or employee, subject to approval of the general membership at a regular meeting."

Count I of the three-count Complaint is entitled "Breach of Duty of Loyalty" but is somewhat ambiguous. The claim asserted in Count I is based on what is described as the defendants' alleged breach of "the fiduciary trust they owed as employees to Local 134 by soliciting the members of Local 134 to abandon it [and] by utilizing the resources of Local 134 to engage in such solicitation . . .," (Compl. ¶ 20), and the relief sought is "approximately $135,000" for decline in membership, loss of income, and loss of bargaining strength. (Id. ¶ 21.) However, during argument before the Magistrate Judge and in objecting to the Magistrate Judge's R&R, Rider describes Count I as brought pursuant to Section 301 of the Labor Management Relations Act("LMRA"), 29 U.S.C. § 185, and based on a violation of the SEIU constitution. (Pl.'s Mem. at 1.)

Count II is entitled "Breach of Common Law Duty of Non-Competition." As the title implies, it is based on an alleged breach of a state law "duty of loyalty" owed to Local 134 to "refrain from soliciting its membership and competing directly with Local 134 for membership," (Compl. ¶ 24), for which Local 134 seeks damages in the amount of $135,000. (Id. ¶ 25.)

Count III is entitled "Conversion of Local 134 Funds." It is

based on allegations that the defendants paid themselves "salary increases that were not authorized by the membership of Local 134," as required by Local 134's constitution, (id. ¶ 27), and that they utilized Local 134's funds "for purposes other than legitimate union purposes." (Id. ¶ 28). This count seeks money damages and restitution for the sums converted. (Id. ¶ 30.)

The defendants moved, pursuant to Fed. R. Civ. P. 12(c), for judgment on the pleadings on the ground that the claims contained in all three counts are preempted by the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 et seq.; that the claims contained in Counts II and III also are preempted by Section 301 of the LMRA, and that, under Section 301, the claim for money damages contained in Count I may not be made against an individual union member.[2]

The Magistrate Judge essentially agreed and found that, except for the unauthorized salary claim contained in Count III, all of Rider's claims are preempted by the NLRA because the defendants' alleged conduct "arise[s] directly out of a dispute for representative status between two competing labor organizations and implicate[s] conduct arguably protected or prohibited under § 7 of the NLRA." (R&R at 11.) The Magistrate Judge also found that

[2] The defendants also argued that the claims are barred by the statute of limitations; that Local 134 lacks standing to assert a violation of SEIU's constitution; and that any claims under the union constitution should be dismissed for failure to exhaust intra-union remedies. However, the Magistrate Judge did not address any of these arguments and the defendants did not file any objection to the R&R.

Rider's "state law claims" for "breach of common law duty of non-competition" (Count II) and "conversion (other than the salary increase claim)" are preempted by Section § 301 of the LMRA. (R&R at 13.) Finally, the Magistrate Judge found that, in any event, Rider's state law claims (presumably, with the exception of the claim for unauthorized salary increases contained in Count III) also run afoul of Section 301 because they seek money damages, which Section 301(b) does not permit to be recovered from an individual union member. (R&R at 15.) Accordingly, the Magistrate Judge recommended that the defendants' Motion for Judgment on the Pleadings be granted as to all claims except the state law conversion claim relating to alleged unauthorized salary increases and that this Court decline to exercise supplemental jurisdiction over that claim. (R&R at 17-18.)

Rider disputes each of the Magistrate Judge's findings and urges this Court to reject the Magistrate Judge's R&R. The defendants have filed a memorandum in opposition to Rider's objections.

## Standard of Review

A motion for judgment on the pleadings seeks a determination on the merits of the claim asserted, and the standard applied in ruling on such a motion is the same as for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Accordingly, a motion for

judgment on the pleadings should be granted only "if the complaint 'shows no set of facts which could entitle the plaintiff to relief.'" Collier v. City of Chicopee, 158 F.3d 601, 602 (1st Cir. 1998)(quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)).

However, in this case, although the defendants' motion is styled as a motion for judgment on the pleadings, their argument with respect to Count III is not directed at the merits of that claim. Rather, their argument is that this Court should decline to exercise jurisdiction over the claim. Consequently, with respect to Count III, the defendants' motion should be treated as similar to a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, or, more specifically as a motion to decline jurisdiction pursuant to the discretion conferred by United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966), and its progeny.

## Analysis

### I. NLRA Preemption

As the Magistrate Judge noted, in enacting the NLRA, Congress intended to "create a uniform, nationwide body of labor law interpreted by a centralized expert agency -- the National Labor Relations Board (NLRB)," Tamburello v. Comm-Tract Corp., 67 F.3d 973, 976 (1st Cir. 1995), that would have "primary jurisdiction over

disputes involving unfair labor practices or representational issues." Newspaper Guild of Salem, Local 105 v. Ottaway Newspapers, Inc., 79 F.3d 1273, 1283 (1st Cir. 1996).

Section 8 of the NLRA, 29 U.S.C. § 158, makes it an unfair labor practice for either an employer or a labor organization to interfere with an employee in the exercise of the rights guaranteed by Section 7 of the NLRA, 29 U.S.C. § 157. Section 7, in turn, confers on employees the right to "join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . .." Id. Section 7 has been construed "to protect employees when they engage in otherwise proper concerted activities in support of employees of employers other than their own." Eastex, Inc. v. NLRB, 437 U.S. 556, 564, 98 S. Ct. 2505, 2512, 57 L. Ed. 2d 428, 438 (1978).

In San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 79 S. Ct. 773, 3 L. Ed. 2d 775 (1959), the Supreme Court held that "[w]hen an activity is subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the [NLRB] if the danger of state interference with national policy is to be averted." 359 U.S. at 245, 79 S.Ct. at 780, 3 L.Ed.2d at 783. The test for determining whether Garmon preemption applies was articulated in Belknap, Inc. v. Hale, where

the Supreme Court stated:

> "[S]tate regulations and causes of action are presumptively preempted if they concern conduct that is actually or arguably either prohibited or protected by the Act. The state regulation or cause of action may, however, be sustained if the behavior to be regulated is behavior that is of only peripheral concern to the federal law or touches interests deeply rooted in local feeling and responsibility. In such cases, the state's interest in controlling or remedying the effects of the conduct is balanced against both the interference with the [National Labor Relations] Board's ability to adjudicate controversies committed to it by the Act, and the risk that the state will sanction conduct that the Act protects."

Belknap, Inc. v. Hale, 463 U.S. 491, 498-99, 10 S. Ct. 3172, 3177, 77 L. Ed. 2d 798, 807 (1983) (emphasis added) (citations omitted).

As the Magistrate Judge pointed out, a definitive finding that the conduct in question is either prohibited or protected by the NLRA is not required in order to trigger preemption. It is sufficient to find that the conduct arguably is prohibited or protected. Bldg. & Constr. Trades Council v. Assoc.'d Builders & Contractors of Mass./R. I., 507 U.S. 218, 225, 113 S.Ct. 1190, 1194, 122 L.Ed.2d 565 (1993) (citing Wis. Dep't of Indus., Labor & Human Relations v. Gould Inc., 475 U.S. 282, 286, 106 S.Ct. 1057, 89 L.Ed.2d 223 (1986) ("States may not regulate activity that the NLRA protects, prohibits, or arguably protects or prohibits.")) Whether the conduct actually is prohibited or protected is a determination to be made by the NLRB. Pa. Nurses Ass'n v. Pa. State Educ. Ass'n, 90 F.3d 797, 802-803 (3d Cir. 1996) ("it is for

the NLRB, not the courts, to decide whether the particular controversy falls within the scope of section 7 or 8 of the NLRA.").

In objecting to the Magistrate Judge's finding of NLRB preemption, Rider makes the bald assertion that "the NLRB simply does not have jurisdiction over disputes between a union as an employer and the union's employees, regarding those employees' performance of their obligation to work on behalf of the members of Local 134 . . . ." (Pls.' Mem. at 3.)

To the extent that this assertion is meant to imply that the NLRA does not apply to conduct by a union toward its employees, it is unsupported by any citation to authority and it is contrary to both the plain language of the statute and the cases construing it. Section 8(a)(1) makes it an unfair labor practice for "an employer" to interfere with the exercise of rights guaranteed to an employee under Section 7. It makes no exception for employers that are labor unions. See id. Moreover, the Supreme Court has specifically held that, when a labor union acts as an employer, it is deemed an "employer" within the meaning of the NLRA and subject to the jurisdiction of the NLRB. Office Employees Int'l Union, Local 11 v. NLRB, 353 U.S. 313, 316, 77 S. Ct. 799, 801, 1 L. Ed. 2d 846, 848-49 (1957).

To the extent that Rider's assertion is meant to imply that the NLRB is not implicated because the claims at issue deal solely

with the manner in which the defendants performed their duties as employees, the assertion rests on a false premise. As the Magistrate Judge observed, Rider's claims arise out of conduct allegedly engaged in during the course of a representational dispute between two competing labor unions. (R&R at 11.) Moreover, while the defendants may have owed a common law duty of loyalty to Local 134 as their employer, their status as employees also conferred upon them the right, under Section 7, to engage in concerted activities for the purpose of selecting a different bargaining representative and to assist others in doing so. Overseeing representational disputes between unions and protecting an employee's right to join or assist a labor organization in organizational activities are matters that lie at the heart of national labor policy as reflected in the NLRA, and, therefore, they are sufficient to trigger Garmon preemption.

Rider also asserts that the NLRB does not preempt the claim made in Count I because "the Garmon doctrine is not relevant to actions within the purview of § 301." (Pls.' Mem. at 3-4.) Rider's counsel cite William E. Arnold Co. v. Carpenters Dist. Counsel of Jacksonville, 417 U.S. 12, 16, 94 S. Ct. 2069, 2072, 40 L. Ed. 2d 620, 624-25 (1974), as authority for that assertion, but a close reading of Arnold shows that it does not support such a sweeping assertion.

Arnold dealt with a suit against a labor union for violation

of a "no strike" clause contained in a collective bargaining agreement. The issue, there, was whether the fact that, arguably, the strike also was an unfair labor practice divested the state court of jurisdiction. In answering that question in the negative, the Arnold court reaffirmed that Garmon preemption requires deference "to the exclusive competence of the National Labor Relations Board" when "an activity is either arguably protected by § 7 or arguably prohibited by § 8 of the NLRA." 417 U.S. at 15-16, 94 S. Ct. at 2073, 40 L. Ed. 2d at 624-25. However, the Court recognized an exception to that rule when "the activity in question . . . constitutes a breach of a collective-bargaining agreement" that includes a binding procedure for resolving disputes regarding alleged breaches of the agreement. 417 U.S. at 16-17, 94 S. Ct. at 2073, 40 L. Ed. At 625. The Arnold court described this exception as consistent with "the Congressional purpose that § 301 suits in state and federal courts should be the primary means for 'promoting collective bargaining that (ends) with agreements not to strike'" because "[t]he assurance of swift and effective judicial relief provides incentive to eschew economic weapons in favor of binding grievance procedures and nostrike clauses." 417 U.S. at 18, 94 S. Ct. at 2073, 40 L. Ed. 2d at 626. (citations omitted).

Unlike Arnold, this case is not a suit to enforce a collective bargaining agreement that prescribes a binding procedure for resolving disputes over alleged breaches of the agreement. In

fact, it is not even a suit to enforce a collective bargaining agreement. Rather, this is a suit against individual employees based on organizational activities in which they allegedly engaged during the course of a representational dispute between two labor unions. Therefore, it does not fit within the relatively narrow exception to Garmon preemption carved out by Arnold. As the Supreme Court explained in Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Employees v. Lockridge, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971):

> The legislative determination that courts are fully competent to resolve labor relations disputes through focusing on the terms of a collective-bargaining agreement cannot be said to sweep within it the same conclusion with regard to the terms of union-employee contracts that are said to be implied in law. That is why the principle of Smith v. Evening News [371 U.S. 195, 83 S. Ct. 267, 9 L. Ed. 2d 246 (1962)] (finding concurrent jurisdiction between the Labor Board and federal courts under section 301 where an alleged breach of a collective bargaining contract is also an unfair labor practice) is applicable only to those disputes that are governed by the terms of the collective-bargaining agreement itself.

403 U.S. at 300-01, 91 S.Ct. at 1925, 29 L. Ed.2d at 491.

Finally, Rider argues that his claims fall within what Belknap recognized as exceptions to Garmon preemption for "behavior that is of only peripheral concern to the federal law or touches interests deeply rooted in local feeling and responsibility." Belknap, 463 U.S. at 498, 103 S.Ct. at 3177, 77 L. Ed. 2d at 807. (Pls.' Mem. at 6-7.) More specifically, Rider argues that "[e]mployee

disloyalty and theft is a traditional matter for local regulation and not of federal concern." (Pls.' Mem. at 7.) That argument may have some merit with respect to a claim of disloyalty that involves nothing more than an alleged theft from the union. However, where, as here, the alleged "disloyalty" consists of, or is intertwined with, activity that is expressly protected by the NLRA, it is of much more than "peripheral concern" to federal law, and the extent to which it "touches on interests . . . deeply rooted in local feeling and responsibility" is correspondingly diminished.

Contrary to Rider's pollyannish assertions, NLRB preemption of such claims does not confer on union employees a license to steal. (Pls.' Objection to R&R at 2-3.) To the extent that they misappropriated union funds, they may be held liable for conversion or breach of fiduciary duty. Preemption merely prevents employees from being subjected to liability under state law for conduct that arguably is protected by the NLRB.[3]

**II. <u>Section 301 Preemption</u>**

Section 301(a) of the NLRA vests federal district courts with jurisdiction over "suits for violation of contracts . . . between . . . labor organizations," 29 U.S.C. § 185(a), and it is well established that a national union's constitution amounts to a contract between the national union and its local affiliate, which

---

[3] Indeed, in this case, even the defendants concede that Rider is free to pursue his conversion claims in state court.

is "a contract between two unions within the meaning of § 301." Wooddell v. Int'l Bhd. of Elec. Workers Local 71, 502 U.S. 93, 99, 112 S. Ct. 494, 499, 116 L. Ed. 2d 419, 429 (1991). Accordingly, except in cases where Garmon preemption applies, a national union may sue its former officials under Section 301 for violations of the union's constitution. Int'l Union of Elec., Elec., Salaried, Machine & Furniture Workers, AFL-CIO v. Statham, 97 F.3d 1416, 1421-22 (11th Cir. 1996).

It is equally well established that the LMRA preempts a state law claim "if the resolution of [that] claim depends upon the meaning" of a contract covered by Section 301. Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 405-06, 108 S. Ct. 1877, 1881, 100 L. Ed. 2d 410, 418-19 (1998). As the Magistrate Judge noted, the First Circuit has held that a state law claim "depends" on the meaning of a contract covered by Section 301 if the claim "alleges conduct that arguably constitutes a breach of a duty that arises pursuant to [such a contract]" or resolution of the claim "arguably hinges upon an interpretation of [the contract]." Flibotte v. Penn. Truck Lines, Inc., 131 F.3d 21, 26 (1st Cir. 1997) (citing United Steel Workers of Am. v. Rawson, 495 U.S. 362, 369, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990) and Allis-Chalmers v. Lueck, 471 U.S. 202, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985)).

Here, the Magistrate Judge found that Rider's "state law"

claims are preempted by Section 301. (R&R at 13-14.) Since, during argument before the Magistrate Judge, Rider's counsel "clarified" that the claim asserted in Count I was not a common law claim but rather a claim brought pursuant to § 301; and, since the conversion claim asserted in Count III is not based on any alleged violation of SEIU's constitution, the Magistrate Judge, presumably, was referring only to the breach of the common law duty of non-competition claim asserted in Count II.[4]

Rider argues that the claim asserted in Count II is not preempted by Section 301 because it alleges a breach of the defendants' duty of loyalty that "[has] nothing to do with the SEIU constitution." (Pls.' Mem. at 10.) That argument is not very convincing because accepting it would exalt form over substance and allow parties to frustrate the purpose of Section 301 preemption by labeling conduct that arguably is governed by a contract between labor organizations as a breach of some state law duty. In cases where the two types of claims are based on the very same conduct, this would create a risk of different results depending on which theory is advanced, which is precisely the kind of inconsistency

---

[4]To the extent that Count III may allege a violation of Local 134's constitution, it would not be preempted by Section 301 because, unlike a national union's constitution, a local affiliate's constitution is not deemed a contract between labor organizations. Korzen v. Local Union 705, Int'l Bhd. of Teamsters, 75 F.3d 285, 288 (7th Cir. 1996) (breach of local union's constitution was not within scope of section 301, but instead a "straightforward claim for breach of contract under state common law.").

that Section 301 preemption is designed to prevent. Lingle, 486 U.S. at 404, 108 S.Ct. at 1880, 100 L. Ed. 2d at 417 (Section 301 mandates "resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes.").

This case provides an apt example of why the label attached to a claim should not be determinative as to whether the claim is preempted by Section 301. It is at least arguable that the defendants' alleged solicitation on behalf of USAW constituted a breach of the duty owed under SEIU's constitution and/or that liability for their actions hinges on an interpretation of their obligations under that constitution. In fact, that is precisely what Count I, as "clarified," alleges. Allowing Rider to make conduct of a union member that allegedly or arguably is governed by the union's constitution the basis for a common law claim would enable state law to trump the provisions of a Section 301 contract, thereby subverting the purpose of Lingle preemption.

III. Availability of Damages Under Section 301

Section 301(b) of the LMRA provides that "any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets." 29 U.S.C. § 185(b).

Although the statute expressly protects individual union members from liability for damages only with respect to judgments "against a labor organization," it has been held to extend similar protection to union officials who are sued by labor organizations. Shea v. McCarthy, 953 F.2d 29, 32 (2[d] Cir. 1992) (union members may obtain equitable relief in suit against union officers for violation of union constitutions, but not money damages ); see also Operative Plasterers & Cement Masons Int'l Ass'n v. Benjamin, 776 F. Supp. 1360, 1367 (N.D. Ind. 1991).

In their argument before the Magistrate Judge, Rider's counsel attempted to evade Section 301's ban on awards of money damages against individual union members by characterizing Count I as a claim for equitable relief that is permitted under Section 301. Shea, 953 F.2d at 32. Thus, they argued that even though Count I seeks damages "estimated to be approximately $135,000" for "the decline in membership and loss of income to Local 134 as well as [a] resulting loss of bargaining strength," it really is a claim for "equitable restitution" of the defendants' salaries, a contention that the Magistrate Judge found "not convincing." (R&R at 16.)

Unchastened by that rebuff, counsel now describe the claim as seeking "restitution for union funds spent on defendants' activities on behalf of a competitor union" that includes "unauthorized salary and any other expenditures, such as printing

costs, incurred in connection with defendants' campaign." (Pls.' Mem. at 12.) This second attempt to redefine the claim as something different from what the Complaint plainly states is equally unpersuasive.

## Conclusion

For all of the foregoing reasons, this Court finds as follows:

1. The claim asserted in Count I is preempted by the NLRA; and, in any event, since it seeks consequential damages for loss of bargaining strength and membership, it cannot be asserted under Section 301.
2. The breach of a common law duty non-competition claim asserted in Count II is preempted by both the NLRB and Section 301.
3. To the extent that the common law conversion claim asserted in Count III can be construed as a claim for anything more than recovery of salary payments attributable to work performed on behalf of USAW and/or unauthorized raises and/or the use of Local 134's funds for improper purposes, it is preempted by the NLRA. To the extent that this claim is limited to the recovery of those amounts, it is not preempted but it is a state law claim over which this Court declines to exercise supplemental jurisdiction. <u>See</u> <u>Gibbs</u>, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218.

Accordingly, it is hereby ORDERED that:

1. The defendants' Motion for Judgment on the Pleadings with respect to Count I is GRANTED.

2. The defendants' Motion for Judgment on the Pleadings with respect to Count II is GRANTED.

3. To the extent that Count III seeks anything more than recovery of unauthorized raises and/or funds of Local 134 that the defendants expended for improper purposes, the defendants' Motion for Judgment on the Pleadings is GRANTED. To the extent that Count III seeks only recovery of unauthorized raises and/or conversion of union funds, it is dismissed for lack of jurisdiction.

IT IS SO ORDERED,

Ernest C Torres

Ernest C. Torres

Chief Judge

Date: March 23 , 2006